AFFIRM; Opinion issued November 27, 2012.



In The

## Court of Appeals
## Fifth District of Texas at Dallas

No. 05-11-00291-CV

GREEN MEADOW OIL & GAS CORPORATION, Appellant

V.

EOG RESOURCES, INC., Appellee

On Appeal from the 116th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 08-15688-F

# OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion By Justice O'Neill

Green Meadow Oil & Gas Corporation appeals the trial court's judgment granting EOG Resources, Inc.'s motion for summary judgment. In three issues, Green Meadow contends generally that the trial court erred in granting EOG's motion for summary judgment and in denying its own motion for summary judgment. We overrule Green Meadow's issues and affirm the trial court's judgment.

## Background

In 2008, EOG was contracting with R.S. Peveto, Jr. Properties, Inc. (RSP) to obtain oil and gas leases in Montague County, Texas. EOG set the terms and prices for the leases. RSP contracted with RAS Interest, Inc. RAS specializes in negotiating and facilitating the purchase of oil and gas

leases throughout Texas. Roger Steward owned RAS. RSP paid for land man services provided by RAS through Steward. Steward worked with Green Meadow and its principal, Stephen W. Knight, with regard to four oil and gas leases at issue in this case.

In March 2008, Green Meadow, as lessee, acquired the four oil and gas leases. Green Meadow then tried to "flip" each of the leases to EOG at a higher price than Green Meadow had paid. This was to be accomplished through four assignments of the leases. Green Meadow prepared the assignments. Neither the leases nor the assignments were on forms used by EOG. Each lease was accompanied by a draft which provided that if the draft was not paid within twenty banking days, the collecting bank was to return it to the payee and all further obligations of the parties would terminate.

After the drafts were signed, Steward submitted the leases and assignments, along with the lease acquisition reports to Wendy Dalton at EOG for approval. While reviewing the title documents, EOG learned for the first time that the assignments created an additional overriding royalty that reduced the amount of its mineral estate. EOG did not approve title to the leases. Prior to the twentieth banking day, EOG declined payment of each of the drafts. Green Meadow filed a lawsuit to enforce payment for the purchase of the leases. Both parties moved for summary judgment. The trial court granted EOG's motion for summary judgment and denied Green Meadow's motion. This appeal timely followed.

## Standard of Review

The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 825 (Tex. App.—Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.

–2–

R. Civ. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 549; *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of America*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied). When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We render the judgment the trial court should have rendered. *Id.*

## EOG's Motion for Summary Judgment

In its first issue, Green Meadow contends the trial court erred in granting summary judgment for EOG. Specifically, Green Meadow contends that it performed all of its contractual obligations and was entitled to payment of the drafts as a matter of law. In its third issue, Green Meadow contends summary judgment was improper because genuine issues of material fact exist as to whether the titles on the leases were good.

The construction of an unambiguous written contract is a question of law for the court. *See Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex.2006). When construing a contract, we must ascertain the true intentions of the parties as expressed in the writing itself. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333-34 (Tex.2011). In identifying the intention of the parties, we examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered

—3—

meaningless. *See Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex.2005). If, after the rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

Green Meadow contends, pursuant to the terms of the drafts, the only reason they would not be paid is if the leases did not have good title. It argues that EOG breached the agreement by failing to pay the drafts because title for each of the leases was good. Moreover, Green Meadow points out that EOG never indicated that title was not good.

Each of the drafts state:

NOT LATER THAN 20 BANKING DAYS AFTER SIGHT AND SUBJECT TO APPROVAL OF TITLE

\* \* \*

In consideration of Grantee's/Lessee's agreement to examine title to the interest conveyed by the OGML, the payees hereby appoint the collecting bank their escrow agent to hold this draft and any attachments for the time herein specified and no party hereto shall have the right to demand return of this draft or the OGML prior to the expiration of such period. All parties hereto and to the OGML agree that the collecting bank shall not incur any liability whatsoever to any party by its refusal to return this draft and any attachments during said period of time. Upon timely acceptance and payment hereof, the collecting bank shall deliver this draft and any attachments to Grantee/Lessee, but if draft is not paid within said time the collecting bank shall return this draft and any attachments to the payee or forwarding bank and all further obligations of the parties hereto shall terminate.

EOG contends this language permits it to not pay the drafts without any penalty. As support, EOG relies upon similar language that was construed in *Spellman v. Lyons Petroleum, Inc.,* 709 S.W.2d 295 (Tex. Civ. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). In *Spellman,* the language in the draft submitted with an oil and gas lease stated:

In the event this draft is not paid within said time, the collecting bank shall return the same to forwarding bank and no liability for payment or otherwise

-4-

shall be attached to any of the parties hereto.

*Id.* at 297. The *Spellman* court referred to the above language as the "no liability" clause. In finding the prior cancellation of the draft effective, the court held that the "no liability" clause caused the contract to fail for want of mutuality. *Id.* at 298.

Green Meadow tries to distinguish *Spellman* by arguing that the no liability clause is preprinted and inconsistent with the typed provision that the draft be paid within twenty banking days and subject to approval of title. Green Meadow argues the typed provision supercedes an inconsistent preprinted provision. *See Harry F. Frey & Company v. W.D. Lacy Feed Co.*, 272 S.W.2d 765, 767 (Tex. Civ. App.—Waco 1954, writ dism'd); *Constitution Indemnity Co. of Philadelphia v. Ambrust*, 25 S.W.2d 176 (Tex. Civ. App.—San Antonio 1930, writ ref'd). However, as EOG points out in its brief, Green Meadow did not present any evidence that the language with the no liability clause is preprinted and the language about approval of title is typed. We find Green Meadow's contention without merit.

EOG contends that, under the contract, it had an absolute right not to pay the drafts and that it exercised that right. In her affidavit, Wendy Dalton, an employee of EOG, stated that on or before the twentieth banking day, EOG refused payment of each draft.

Green Meadow also contends that the drafts expressly provided that the only condition to payment was good title. It argues that the language "And Subject to Approval of Title" on top of each draft means that bad title is the only reason EOG could refuse payment of the drafts. Green Meadow argues the trial court erred in granting summary judgment because EOG failed to show a defect in title that would excuse its nonperformance. First, we note the drafts do not use the terms "good title" or "defect in title." Rather, the drafts state they are subject to EOG's "approval of title."

Green Meadow argues that it submitted summary judgment evidence that Steward, as EOG's agent, confirmed that the titles were good. Confirmation by Steward that the titles were good had no bearing on EOG's alleged obligation to approve title. If Steward's word that the titles were good was all that was necessary, there would have been no reason for him to submit them to Dalton for EOG's approval.

Green Meadow also contends that Steward's determination of good title should be sufficient because it was acting as an agent for EOG. It points to the fact that each draft was signed "Roger Steward, Agent for EOG Resources, Inc." However, Dalton stated in her affidavit that Steward "did not have the authority to bind EOG to the terms of the deal." Steward behaved in accordance with Dalton's assessment of his authority by submitting the leases and assignments for her approval. Steward's determination of good title was not the final word. Pursuant to the drafts, the final word belonged to EOG.

Steward prepared the lease acquisition reports and sent them, along with the leases and assignments, to Dalton for EOG's approval. Steward testified that it was Dalton who would approve the leases for EOG. Under the contract, EOG had the right not to pay the drafts if it did not approve title. Dalton stated that EOG did not approve title to each of the leases and specifically, did not approve the form of each of the leases. Neither the leases nor the assignments were on forms used by EOG in the area. Moreover, when EOG reviewed the titles, it learned for the first time that an additional overriding royalty, a separate interest that reduced the mineral estate of EOG, had been created in the assignments. Steward testified at his deposition that all leases that he had acquired for EOG with the exception of the four leases at issue here, were leases direct from the mineral owner. In addition, the subject four leases were the only ones that included an overriding royalty in addition to the lease royalty.

We conclude that the drafts provided that they would not be paid unless EOG approved title. The summary judgment evidence established that the documentation was submitted by Steward to Dalton at EOG for EOG's approval. For numerous reasons, EOG did not approve title. Moreover, under the terms of the drafts, EOG had the absolute right not the pay the drafts. For these reasons, we hold that EOG did not breach the contract when it elected not to pay the drafts and the trial court did not err in granting EOG's motion for summary judgment. We overrule Green Meadow's first and third issues.

### Green Meadow's Motion for Summary Judgment

In its second issue, Green Meadow contends the trial court erred in denying its motion for summary judgment. In light of our disposition of Green Meadow's first and third issues, we conclude the trial court did not err in denying Green Meadow's motion for summary judgment. We overrule Green Meadow's second issue.

We affirm the trial court's judgment.

MICHAEL J. O'NEILL
JUSTICE

110291F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GREEN MEADOW OIL & GAS CORPORATION, Appellant

No. 05-11-00291-CV    V.

EOG RESOURCES, INC., Appellee

Appeal from the 116th Judicial District Court of Dallas County, Texas. (Tr.Ct.No. 08-15688-F).

Opinion delivered by Justice O'Neill, Justices FitzGerald and Lang-Miers, participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**. It is **ORDERED** that appellee EOG RESOURCES, INC. recover its costs of this appeal from appellant GREEN MEADOW OIL & GAS CORPORATION.

Judgment entered November 27, 2012.


MICHAEL J. O'NEILL
JUSTICE