**AFFIRMED and Opinion Filed December 13, 2019**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-00955-CV**

**ELYAHOU LAVIZADEH AND PARVANEH LAVIZADEH, TRUSTEES OF THE ELYAHOU AND PARVANEH LAVIZADEH TRUST 2004, Appellants**
**V.**
**ALI A. MOGHADAM, Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-06627**

## MEMORANDUM OPINION

Before Chief Justice Burns, and Justices Richter and Rosenberg
Opinion by Chief Justice Burns

Appellants Elyahou Lavizadeh and Parvaneh Lavizadeh, Trustees of the Elyahou Lavizadeh and Parvaneh Lavizadeh Trust 2004 (collectively, the Trust) appeal a judgment rendered in favor of Ali A. Moghadam regarding Moghadam's alleged breach of a guaranty. In three issues, the Trust complains the trial court impermissibly denied its right to a jury trial, erred in construing the guaranty and finding no breach by Moghadam, and in granting Moghadam's motion for protection regarding the testimony of its attorney, sought by the Trust. Finding no error, we affirm.

1

**FACTUAL BACKGROUND**

Moghadam is the managing member of HP Texas Holdings, LLC f/k/a Highland Park Investments, LLC, (HP).[1] In 2006, HP sold an apartment complex to the Trust (the Property). The sale generated three lawsuits between and among these parties, a case filed in 2007[2] (the 2007 Lawsuit), a subsequent case filed in 2010 (the 2010 Lawsuit), as well as the instant case and this appeal.

In the 2007 Lawsuit, HP obtained a judgment against the Trust in the principle amount of more than $1.9 million (the Judgment). Although HP reacquired the Property pursuant to a constable's auction, the Trust also appealed the Judgment. HP subsequently filed the 2010 Lawsuit alleging the Trust had made certain fraudulent transfers. While the Judgment was on appeal and the 2010 Lawsuit was pending, in a 2014 telephone call between certain counsel and the son of the trustees, the parties settled both lawsuits by agreeing to dismiss the 2007 Lawsuit appeal and the 2010 Lawsuit, resolve a related tax lawsuit,[3] and by executing several instruments. The Judgment however, was not discharged by the settlement.

Rather than agreeing to offset or reduce the amount of the Judgment the Trust owed to HP, the parties executed (a) a promissory note by which HP agreed to pay $120,000 to the Trust by a date certain (the Note); (b) a Deed of Trust on the Property securing the Note; and, (c) a personal guaranty executed by Moghadam, individually, in favor of the Trust (the Guaranty). The Guaranty prohibited "any claim of offset" as between the amount owed pursuant to the Note and the

---

[1] Although HP forfeited its corporate charter for a brief period of time during the pendency of the proceedings below, in its brief the Trust concedes HP's reinstatement as further evidenced by the Certificate of Filing reinstating HP as an active corporate entity found in the record. Thus we find no standing or like issue with respect to the temporary forfeiture.

[2] Cause No. 07-04950-J, filed in the 191st District Court of Dallas County, and later appealed to this Court.

[3] In 2012, while both lawsuits were pending, Dallas County and various related taxing authorities sued HP for property taxes owed with respect to the Property.

2

Guaranty, and the Judgment. It also included Moghadam's agreement not to execute on the Judgment, and his promise to indemnify the Trust for damages caused by such execution.

The Trust did not pay the Judgment and HP did not pay the $120,000 due under the Note. Five months after HP defaulted on the Note and pursuant to the still unsatisfied Judgment, HP obtained a turnover order by which the Note and Deed of Trust were turned over to a receiver for sale or collection. When the Trust's emergency motion to dissolve the turnover order and discharge the receiver was denied, it filed the instant lawsuit against Moghadam only, alleging Moghadam had breached the Guaranty—through HP's motion for turnover order and appointment of receiver—which the Trust asserted was an execution in violation of the Guaranty.

In August 2017, the Trust sent a demand letter to Moghadam pursuant to the Guaranty, seeking payment of $191,700 as indemnity,[4] $1,000 in attorney's fees, "plus any post-judgment interest." On September 6, 2017, the receiver notified both parties he had received payment "in full and final satisfaction of the Note" in the amount of $191,700 and would distribute that amount to HP, the judgment creditor.[5]

On September 19, 2017, the parties appeared for trial and several pre-trial motions, including HP's motion for protective order arising from the Trust's designation of HP's counsel as a fact witness. The Trust asserted HP's counsel's testimony was relevant to the terms of the oral settlement and the parties' intent regarding the Guaranty's terms. During arguments before jury selection commenced, the parties disclosed that Moghadam had paid the principle amount owed under the Note plus interest. After further discussion with the parties and following their

---

[4] The $51,700 was the Trust's calculation of accrued interest following default.

[5] The receiver's notice was filed with the Court in the 2007 Lawsuit, and Moghadam's counsel requested that the court judicially notice all documents and pleadings filed in both the 2007 Lawsuit and the 2012 Lawsuit, over which the same trial judge had presided.

3

suggestions, the judge informed the parties that until the remaining legal issues were resolved, she saw no factual issues and no reason to present the case to a jury. The court admitted the Trust's exhibits, agreed to the parties' proposal regarding stipulated admission of Moghadam's exhibits (which were admitted on the same day although submitted to the court a few days later), gave each side a time-line for additional briefing regarding the legal issues, and stated she would conduct a further hearing and jury trial if necessary.

Instead of filing a brief regarding the legal issues—whether payment on the Guaranty to the receiver operated as an offset prohibited by the Guaranty rather than payment on the Note as guaranteed—the Trust briefed its denial of the right to a jury trial. The trial court entered judgment in favor of Moghadam, and this appeal followed.

## DISCUSSION

**A.     The Trust agreed to the court's determination of the legal issues premised on stipulated facts.**

In its first issue, the Trust complains the trial court infringed on its Constitutional right to a jury trial by "sua sponte dismissing the jury trial" and deciding the case solely upon documentary evidence. The Trust, however, not only failed to object to the proposal, it consented.

During the hearing conducted prior to jury selection, the Trust's counsel initially stated "for the record that we're here on a jury trial setting" and he believed "factual issues [existed] that may need to be presented to the jury. . .", however, he subsequently agreed to Moghadam's counsel's proposal to stipulate all exhibits into evidence. More specifically, the Trust agreed, "it would be appropriate" to have a "summary trial by the Judge on those issues, and then if we need a jury on a fact issue . . . " the parties would return to court for further proceedings. Following this exchange and an off-the-record discussion, the Trust offered 18 exhibits into evidence, and the court admitted them. Moghadam's exhibits were likewise deemed admitted at the same time

4

although submitted electronically a few days later. We conclude the Trust's agreement with this procedure waived any objection to the court's refusal to submit any issues to a jury. *See Ortega-Carter v. Am. Int'l Adjustment Co.*, 834 S.W.2d 439, 441–42 (Tex. App.—Dallas 1992, writ denied) ("'[S]tipulation' is an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto," which may not be withdrawn prior to entry of judgment if previously accepted); *see also e.g., Kupersmith v. Weitz,* 2006 WL 3407832, *4, (Tex. App.—Houston [14th Dist.] Nov. 28, 2006, no pet.) (court correctly gave effect to parties' stipulations).

Even if we considered the Trust's brief, submitted almost three weeks after its stipulation as a sufficient objection to preserve entitlement to a jury or withdraw its consent for the court's disposition on stipulated facts, we would find no error. The right to a jury trial attaches only when controverted questions of fact exist. *Sullivan v. Barnett,* 471 S.W.2d 39, 44 (Tex. 1971); *Wells Fargo Bank, N.A. v. Leath,* 425 S.W.3d 525, 531 (Tex. App.—Dallas 2014, pet. denied). In neither this Court nor the trial court has the Trust identified any factual issue. As discussed below, construction of the Guaranty is a question of law. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018) (Mere disagreement by the parties regarding contractual interpretation does not prove ambiguity). The existence of a breach, where the facts are undisputed, likewise presents only a question of law. *Grohman v. Kahlig,* 318 S.W.882, 887 (Tex. 2010) ("whether a party has breached a contract is a question of law for the court, not a question of fact for the jury, when the facts of the parties' conduct are undisputed or conclusively established."). Moreover, an abuse of discretion standard governs denial of a jury trial. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). Several weeks after agreeing to a summary trial of the legal issues, the Trust filed a brief objecting to dismissal of the jury panel and argued a jury must decide

questions of fact. It did not identify, however, any factual issues, but rather argued instead that the settlement was comprised of a series of documents, including the Guaranty. But the manner in which the settlement arose and the various documents evidencing the settlement do not create a fact issue, particularly with respect to the legal interpretation of the Guaranty. We overrule the Trust's first issue.

## B.     The trial court correctly interpreted the Guaranty.

In its second issue, the Trust argues the trial court incorrectly interpreted the Guaranty. It asserts the parties' settlement agreement was oral and thus requires us to examine the "context" of the settlement to accurately construe the Guaranty. The Trust urges the words of the parties, "as well as the surrounding facts and circumstances" demonstrate the parties' intent was to ensure the Trust received the $120,000 required by the Note, "free and clear" of any execution on the Judgment, and because the payment was made to the receiver, Moghadam breached the Guaranty.

### 1.     The case was tried on stipulated facts.

Because we must determine the standard governing our review, we necessarily determine how the case was resolved below. Although we acknowledge an imperfect fit,[6] we treat this case as having been tried on stipulated facts pursuant to rule 263. TEX. R. CIV. P. 263 ("Parties may submit matters in controversy to the court upon an agreed statement of facts filed with the clerk, upon which judgment shall be rendered as in other cases; and such agreed statement signed and certified by the court to be correct and the judgment rendered thereon shall constitute the record of the cause."); *Lambda Const. Co. v. Chamberlin Waterproofing & Roofing Sys., Inc.*, 784 S.W.2d

---

[6] We recognize one aspect of the imprecise alignment arises from the Trust's objections to some of Moghadam's exhibits, filed a week after agreeing to a trial on stipulated facts. But the Trust admitted all of the same documents we find necessary and appropriate to review the trial court's judgment, with the exception of the receiver's acknowledgment of payment, to which the Trust did not object and regarding which Moghadam also appropriately requested judicial notice.

6

122, 125 (Tex. App.—Austin 1990, writ denied) (concluding court properly treated parties' agreement during telephone hearing that no disputed facts existed as a rule 263 "submission of agreed statement").

Rule 263 does not require strict compliance, and the substance of what occurred as well as the parties' discussion about the procedure they proposed the court utilize for resolution of the legal issues supports application of the rule here. *Lambda Const. Co.,* 784 S.W.2d at 125; *Addison Urban Dev. Partners, LLC v. Alan Ritchey Materials Co., LC,* 437 S.W.3d 597, 601 (Tex. App.— Dallas 2014, no pet.) ("Although the record does not contain an 'agreed statement signed and certified by the [district] court to be correct,' courts have concluded that strict compliance with rule 263 is not a prerequisite for an agreed case."); *see also Thota v. Young*, 366 S.W.3d 678, 690 (Tex. 2012) ("[W]e have long favored a common sense application of our procedural rules that serves the purpose of the rules, rather than a technical application that rigidly promotes form over substance.").

In reviewing a judgment entered pursuant to stipulated facts, we disregard the court's findings of fact and conclusions of law, issued here pursuant to the Trust's post-judgment request.[7] *Markel Ins. Co. v. Muzyka*, 293 S.W.3d 380, 384–85 (Tex. App.—Fort Worth 2009, no pet.) ("[I]n a case submitted on an agreed statement of facts pursuant to Rule 263, we disregard any findings of fact made by the trial court."). Accordingly, we consider only whether the trial court correctly applied the law to the agreed facts, utilizing a de novo review. *Id.; Addison Urban Dev. Partners,*

---

[7] We also observe rule 263's application mandates a standard of review more favorable to the Trust than the otherwise discretionary review we would employ if we credited the findings of fact and conclusions of law issued at the Trust's request. *Addison Urban Dev. Partners, LLC, LC,* 437 S.W.3d at 600–01 (de novo review of judgment issued pursuant to rule 263 procedure is less deferential than the discretionary review otherwise afforded, "because a trial court has no discretion in deciding what the law is or in properly applying it.") (internal quotation omitted).

*LLC*, 437 S.W.3d at 600–01 ("In a rule 263 agreed case, the only issue on appeal is whether the district court properly applied the law to the agreed facts.").

### 2. The Guaranty lacks ambiguity and parol evidence is unnecessary.

Even if the Trust had raised ambiguity before conceding no questions of fact existed, because we reject use of parol evidence to create ambiguity and find none in the plain language of the Guaranty, we reject the Trust's contention that the Guaranty was ambiguous as well as its parol evidence. In support of its ambiguity argument, the Trust invites us to adopt a circular excuse for considering parol evidence, asserting the context in which the Guaranty came into existence reveals ambiguity with respect to the meaning of the operative language, thereby necessitating parol evidence to clarify the parties' intent. Specifically, the Trust asserts the Guaranty is ambiguous because the parties' true intent was to ensure the Trust received payment on the Note. In support of this argument, the Trust attempts to contort the Guaranty's requirement that Moghadam indemnify the Trust in the event anyone executed on the Judgment as a prohibition that HP[8] forego all collection efforts. We reject the Trust's interpretation.

#### i. The trial court did not err in refusing to consider testimonial parol evidence.

As discussed above, given the language of the Guaranty we are called to construe, we find no use for the parol evidence the Trust sought to introduce through live testimony. Further, although courts may consider the "context in which an agreement is made," the parties may not

---

[8] The Trust also contends the "language of the Guaranty is not limited to Moghadam acting in his individual capacity," we reject this argument because Moghadam signed the Guaranty without any reference to HP, and nowhere in the Guaranty is HP even impliedly included as a party. Because HP was not a party to the Guaranty we accordingly reject any assertion that HP was constrained in any manner by the Guaranty's terms. *See, e.g., Roe v. Ladymon*, 318 S.W.3d 502, 516 (Tex. App.—Dallas 2010, no pet.) (individual and partner in limited liability company does not become a party to an agreement where he executes contract on behalf of disclosed company). Even if we were to determine HP were somehow bound by the Guaranty's provisions, however, the Trust's arguments would still fail because as we conclude bel, HP did not "execute" on the Judgment.

rely on extrinsic evidence "to create an ambiguity or to give the contract a meaning different from that which its language imports." *Anglo–Dutch Petroleum*, 352 S.W.3d at 451 (internal quotation marks omitted); *Lewis v. E. Tex. Fin. Co.*, 136 Tex. 149, 146 S.W.2d 977, 980 (1941) (courts may not consider "proof of circumstances" evidence "when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction"); *First Bank v. Brumitt*, 519 S.W.3d 95, 109–10 (Tex. 2017) ("Extrinsic evidence cannot be used to show that the parties probably meant, or could have meant, something other than what their agreement stated."). The "contextual" parol evidence offered by the Trust sought to define the parties' expressed intent, rather than aid in determining such intent, and thus we reject it.

### ii. No ambiguity exists regarding the parties' failure to prohibit all collection activities, including turnover orders.

Ambiguity presents a question of law determined without resort to the parties' arguments regarding its existence. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018) (Mere disagreement by the parties regarding contractual interpretation does not prove ambiguity); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996) ("The failure to include more express language of the parties intent does not create an ambiguity when only one reasonable interpretation exists."). We ascertain the parties' intentions by examining the entire writing, and give effect to all provisions so none are rendered meaningless. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983); *Green Meadow Oil & Gas Corp. v. EOG Res., Inc.*, 390 S.W.3d 625, 627 (Tex. App.—Dallas 2012, no pet.). We "presume parties intend what the words of their contract say" and interpret contract language according to its "plain, ordinary, and generally accepted meaning" unless the instrument directs otherwise. *URI, Inc.,* 543 S.W.3d at 764. We also ignore parol evidence that varies or contradicts the contract. *Id.* at 757 ("[E]xtrinsic evidence may

only be used to aid the understanding of an unambiguous contract's language, not change it or "create ambiguity.").

We also observe rules of construction aimed specifically at guarantees. Although the extent of a guarantor's liability generally depends on the principal's liability, a guaranty may restrict or expand the guarantor's liability, independently of the underlying debt. *Interstate 35/Chisam Rd., L.P. v. Moayedi*, No. 05-16-00196-CV, 2017 WL 1046768, at \*3 (Tex. App.—Dallas Mar. 20, 2017, no pet.); *Dreiling v. Sec. State Bank & Tr.*, No. 01-14-00257-CV, 2015 WL 1020212, at \*4 (Tex. App.—Houston [1st Dist.] Mar. 5, 2015, no pet.). The terms of a guaranty, however, are strictly construed in favor of the guarantor, and "will not be extended, either by construction or implication, beyond the written terms of the agreement." *Interstate 35/Chisam Rd., LP,* 2017 WL 1046768, at \*3; *Fed. Deposit Ins. Corp. v. Attayi*, 745 S.W.2d 939, 943–44 (Tex. App.—Houston [1st Dist.] 1988, no writ) ("A guarantor may require that the terms of his guaranty be followed strictly; the guaranty agreement may not be extended *beyond its precise terms* by construction or implication." (emphasis original).

The language in the Guaranty we must construe provided:

The $120,000.00 owing by HP Texas Holding, LLC and guaranteed by Guarantor shall not be subject to any claim of offset by virtue of any amount owing by Lender[9] pursuant to DC-07-04950 which Guarantor agrees not to execute on this obligation and indemnifies Lender from any damage it suffers as the result of anyone executing on such judgment.

The plain language of the Guaranty prohibits "claims of offset" and execution. It does not prohibit all collection efforts, including collecting on the Judgment through a turnover proceeding by which HP acquired the Note. We find support for our conclusion and evidence of the parties' objective intent by comparing the Guaranty and the Note, and observing provisions lacking from

---

[9] The Guaranty defined the trustees and the Trust as Lender.

both documents. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008) (collateral and consistent exception to parol evidence rule allows consideration of "a prior or contemporaneous agreement that is both collateral to and consistent with a binding agreement, and that does not vary or contradict the agreement's express or implied terms or obligations."); *Neel v. Tenet HealthSystem Hosps. Dallas, Inc.,* 378 S.W.3d 597, 605 (Tex. App.—Dallas 2012, pet. denied) (objective intent, rather than parties' subjective intent, governs contract construction analysis). First, the Note does not preclude HP from executing, or otherwise collecting, the Judgment—a provision that would logically have been included in an agreement in which HP was the principal obligor, if HP was also impliedly prohibited from the same activity by the Guaranty. Indeed, the Note is silent with respect to offset. Second, in failing to release the Judgment, the parties objectively expressed their intent that the Judgment was not rendered worthless by their settlement and manifested their mutual intent to allow collection or similar activities, so long as Moghadam indemnified the Trust in the event of damages arising from an execution.

Finally, in reaching this conclusion, we do not render the language at issue "surplusage," as asserted by the Trust. We observe the parties—both of whom were represented and whose counsel drafted the language at issue—used specific, narrow legal terms although presumably they knew how to describe and prohibit all collection efforts by which the Trust could be deprived of the value of the Note. As discussed below, we give effect to each term and phrase utilized by the parties, but particularly with respect to interpretation of a Guaranty, we will not expand the meaning of the terms chosen by the parties. The Guaranty prohibited "claims of offset", as well as execution. Neither occurred here.

### 3. Moghadam did not breach the Guaranty.

Although not entirely clear, the Trust appears to argue that (a) because the Guaranty provided the $120k owed by HP under the Note and guaranteed by Moghadam was "not subject to any claim of offset by virtue of any amount owing" pursuant to the Judgment, payment to the receiver for the benefit of HP did not satisfy the Note or discharge Moghadam's guarantee obligation, and constituted a breach by Moghadam; and, (b) because the Note was not satisfied, Moghadam breached the Guaranty in failing to indemnify the Trust for its damages caused by HP's execution. We reject both arguments.

### i. Payment on the Note to the receiver was not an offset, but discharged the Guaranty.

Payment made to the receiver, even if made by Moghadam,[10] was not an offset. The right of setoff recognizes that where parties are indebted to each other,[11] the real amount in issue is the difference between the two debts. *Bandy v. First State Bank, Overton, Tex.*, 835 S.W.2d 609, 618 (Tex. 1992), citing *Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913) (right of setoff "grounded on the absurdity of making A pay B when B owes A"). Pursuant to the doctrine, entities who owe each other money apply the mutual debts against each other, thereby revealing the actual and remaining debt. *Sommers v. Concepcion*, 20 S.W.3d 27, 35 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Rather than applying the amount owed on the Note against the Judgment to render payment unnecessary, the principle and interest due

---

[10] The Trust contends the payment made to the receiver was made by Moghadam rather than HP, because at the time of the payment, HP had temporarily forfeited its corporate charter. We find this argument wholly irrelevant, as well as incorrect from a legal standpoint. So long as a statutory right of reinstatement exists, forfeiture of a corporate charter does not extinguish the corporation's legal existence. *Lighthouse Church of Cloverleaf v. Texas Bank,* 889 S.W.2d 595, 601 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Nonetheless, in his brief, Moghadam does not dispute that he made the payment HP owed on the Note. Further, the Trust does not assert the payment, whether made by HP or Moghadam, was insufficient to discharge HP's obligation on the Note.

[11] We question whether Moghadam's obligation on the Guaranty was mutual to the debt the Trust owed to HP on the Judgment, but find resolution of that issue unnecessary.

were paid. Thus, the parties engaged in the very conduct setoff seeks to prevent: payment by one who is owed more from the party who receives payment. Merely reducing the amount owed on the Judgment through payment on the Note does not convert payment into offset. Setoff did not occur, and thus Moghadam did not breach the Guaranty by paying HP the amount due on the Note.

Moghadam's liability on the Guaranty was dependent on the existence of the underlying obligation. *See e.g., Republic Nat'l Bank of Dallas v. Nw. Nat'l Bank of Fort Worth*, 578 S.W.2d 109, 114 (Tex. 1978) (guaranty creates a secondary obligation pursuant to which guarantor may be required to perform if the primary obligor fails to pay). Once the Note was discharged, the Trust could not prevail on a claim for payment on the Guaranty. *See 423 Colony, Ltd. v. Indep. Executors of Estate of Kern*, No. 02-18-00032-CV, 2019 WL 2223579, at *3 (Tex. App.—Fort Worth May 23, 2019, no pet.) (nonpayment of underlying obligation is one element of claim against guarantor); *Julka v. U.S. Bank Nat'l Ass'n,* 516 S.W.3d 84, 87 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (same). Accordingly, Moghadam's obligation to pay the principle and interest guaranteed was discharged when the Note was paid.

ii. **The turnover order was not an "execution" and Moghadam therefore owed no indemnity.**

Even if we were to conclude that Moghadam's agreement as guarantor "not to execute on this obligation" constrained HP—a conclusion we need not reach—we would still reject the Trust's underlying corollary assertion, that the turnover order was an "execution." The Trust relies solely on *Pierson v. Hammond,* 22 Tex. 585, 587 (1858), for its assertion that an execution "means the process by which the sentence of the law is put in force; it is a general term, which applies to all writs, the object of which is to enforce the judgment of a court." But as our sister court held in distinguishing *Pierson,* a turnover order is neither a writ of execution, nor an execution. *Keith M. Jensen, P.C. v. Briggs*, No. 02-14-00096-CV, 2015 WL 1407357, at *3 (Tex. App.—Fort Worth

13

Mar. 26, 2015, no pet.) (turnover order is not an execution and thus did not prevent judgment from becoming dormant). We recognize the primary holding of *Keith M. Jensen, P.C.* addressed a writ of execution as the requirement at issue for preventing dormancy, but the breadth of the discussion as well as the rules upon which the holding rests—which address "execution" rather than just "writs of execution"—easily encompass our holding as well. *See Keith M. Jensen, P.C.*, 2015 WL 1407357, at *3. For instance, an execution must be addressed to any sheriff or constable, TEX. R. CIV. P. 622, and further, must conform to the requirements of rule 629, by including the clerk's signature and seal of the court, and a mandate that the officer execute it according to its terms. TEX. R. CIV. P. 629; *Keith M. Jensen, P.C.,* 2015 WL 1407357, at *3. Moreover, judgments are enforceable by execution "or other appropriate process." TEX. R. CIV. P. 621.

The turnover order satisfied none of these requirements, and instead was "other appropriate process" by which HP sought to collect on the Judgment. Thus, the turnover order was not an execution that triggered Moghadam's obligation to indemnify the Trust, and Moghadam did not breach the Guaranty by failing to indemnify the Trust for damages, if any, suffered as the result of any execution. We find no error in the trial court's judgment in favor of Moghadam regarding the Trust's breach of contract claim, as a matter of law and without the aid of parol evidence. We overrule the Trust's second issue.

## C. We need not consider Moghadam's motion for protection.

In its final issue, the Trust argues the trial court erred in granting Moghadam's motion for protective order, by which he sought to prevent the Trust from calling his attorney as a witness regarding the formation of the settlement agreement and the parties' intent with respect to the Guaranty. The Trust seeks a ruling on the issue only if this Court agrees the case should be

14

remanded for a trial on the merits. Due to our conclusion on the merits of the judgment entered by the trial court, we need not consider the Trust's third issue and we overrule it.

Finding no error in the trial court's judgment, we affirm.

     /Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

180955F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ELYAHOU LAVIZADEH AND
PARVANEH LAVIZADEH, TRUSTEES
OF THE ELYAHOU AND PARVANEH
LAVIZADEH TRUST 2004, Appellant

No. 05-18-00955-CV     V.

ALI A. MOGHADAM, Appellee

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-06627.
Opinion delivered by Chief Justice Burns,
III. Justices Richter and Rosenberg
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ALI A. MOGHADAM recover his costs of this appeal from appellant ELYAHOU LAVIZADEH AND PARVANEH LAVIZADEH, TRUSTEES OF THE ELYAHOU AND PARVANEH LAVIZADEH TRUST 2004.

Judgment entered December 13, 2019