**Anand JULKA, Appellant**

v.

**U.S. BANK NATIONAL ASSOCIATION as Trustee, as Successor-In-Interest to Bank of America, National Association, Successor by Merger to Lasalle Bank National Association, as Trustee for the Registered Holders of Bear Stearns Commercial Mortgage Securities Inc., Commercial Pass-Through Certificates, Series 2007–PWR17 Appellee**

NO. 01–16–00348–CV

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued January 31, 2017

Paul A. Pilibosian, Houston, TX, for Appellant.

Yasmin Atasi, Windstead PC, Houston, TX, for Appellee.

Panel consists of Chief Justice Radack and Justices Jennings and Bland.

## OPINION

Jane Bland, Justice

This is an appeal from a judgment against a guarantor of a loan. Copperfield Timberlake LLC, a real estate development company, secured the loan from a predecessor of U.S. Bank National Association.[1] Copperfield Timberlake's president,

---

1. The entire name of the Bank that is the party to this appeal is styled: U.S. Bank National Association as trustee, as successor-in-interest to Bank of America National Associa-

Anand Julka, executed a guaranty agreement in his individual capacity, in which he committed to pay up to $250,000 in damages to the Bank in the event of default.

Copperfield Timberlake defaulted on the loan. The Bank foreclosed on the properties and sued to recover from Julka under the guaranty. The Bank moved for summary judgment. Julka responded with a cross-motion that raised the affirmative defenses of payment and estoppel. The trial court granted the Bank's motion and denied Julka's.

On appeal, Julka contends that uncontroverted evidence demonstrates that he satisfied his obligations under the guaranty by providing $1.6 million in note payments to the Bank on Copperfield Timberlake's behalf, and that the trial court misconstrued the guaranty to require that Copperfield Timberlake default on the loan before Julka could apply payments that would satisfy his obligations under the guaranty. Finding no error, we affirm.

## BACKGROUND

In August 2007, Copperfield Timbercreek executed a promissory note payable to the order of the original lender, Prudential Mortgage Capital Company LLC, in the principal amount of $6.8 million. At the same time, Copperfield Timbercreek executed a deed of trust and security agreement to secure the note, pledging as collateral two commercial apartment complexes located in Houston, one on Highway 6 North and the other on FM 529. As additional security, Copperfield Timbercreek also executed an assignment of leases and rents in favor of the original lender.

Acting on behalf of Copperfield Timbercreek and its sole member, 3755 Orange Place, LLC, Julka signed the note, deed of trust, and assignment of rents. The note limited Copperfield Timberlake's liability for its indebtedness arising out of certain, specified circumstances. In his individual capacity, Julka executed the guaranty agreement, in which he agreed to indemnify the Bank for its damages in those circumstances. Julka also committed to full recourse on the note and liability up to $250,000, plus any costs, and legal fees, associated with the guaranty's enforcement.

The loan documents were assigned to other financial institutions and ultimately to the Bank. In March 2013, Copperfield ceased making the payments required under the loan documents. This constituted an event of default, which led to a foreclosure of the properties in October 2013. The calculated deficiency following the foreclosure amounted to $3,561,678.61.

The Bank sued Copperfield Timbercreek and Julka for breach of the loan agreement and Julka individually for breach of his guaranty. Julka asserted the affirmative defenses of payment and quasi-estoppel, arguing that he had discharged his obligation under the guaranty by paying $1,644,835.97 to the Bank in satisfaction of Copperfield Timberlake's obligation on the note.

In the summary judgment proceedings, Julka did not dispute that Copperfield Timberlake had defaulted under the note or that the guaranty was enforceable. Rather, Julka contended that he had satisfied his obligations under the guaranty because he had provided more than $250,000 of his personal funds to Copperfield Timberlake, which in turn allowed Copperfield Timberlake to continue mak-

tion, as successor by merger to LaSalle Bank, National Association, as trustee for the registered holders of Bear Stearns Commercial Mortgage Securities, Inc. commercial mortgage pass-through certificates, series 2007–PWR17.

ing payments on the note for nearly two years before the event of default occurred.

## DISCUSSION

### I. Standard of Review

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). "When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Dorsett*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215; *accord Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). We credit evidence favorable to the nonmovant if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Knott*, 128 S.W.3d at 215–16. When, as here, both parties move for summary judgment and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment the district court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

### II. Applicable Law

▮ Julka asks that we determine his personal obligations under the guaranty agreement. "A guaranty agreement creates a secondary obligation whereby the guarantor promises to be responsible for the debt of another and may be called upon to perform if the primary obligor fails to perform." *Wasserberg v. Flooring Servs. of Tex., LLC*, 376 S.W.3d 202, 205 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Elsey/Honeycutt Ward Sur./Ins. Agency, Inc. v. Nat'l Loan Invs., L.P.*, No. 01–93–00060–CV, 1993 WL 322734, at *3 (Tex. App.—Houston [1st Dist.] Aug. 26, 1993, writ denied) (not designated for publication) (explaining that, because guarantor may be called on to perform once primary obligor has failed to perform, guaranty would not create any additional protection and would therefore be meaningless if primary debtor is found to be exclusive party liable under it).

▮ A lender bringing an action for a breach of a guaranty agreement must establish "(1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor." *Lee v. Martin Marietta Materials Sw., Ltd.*, 141 S.W.3d 719, 720 (Tex. App.—San Antonio 2004, no pet.), *quoted in Dreiling v. Sec. State Bank & Tr.*, No. 01–14–00257–CV, 2015 WL 1020212, at *4 (Tex. App.—Houston [1st Dist.] Mar. 5, 2015, no pet.) (mem. op.); *see Vaughn v. DAP Fin. Servs., Inc.*, 982 S.W.2d 1, 4 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

### III. Analysis

Julka contends that he raised fact issues on his affirmative defenses of payment and estoppel. Both of those affirmative defenses rely on the same evidence—bank statements and financial summaries. The bank statements are from Julka's personal account, which show corresponding disbursements of funds to Copperfield Timberlake

during the period between 2007 and 2013. The Copperfield Timberlake financial summaries show receipt of these funds on various dates between 2007 and 2013 with corresponding entries noted as either "owner contribution," "owner wire," or "owner funding."

■ According to Julka, these documents demonstrate that he discharged his personal obligations under the guaranty by advancing more than $250,000 in funds from his personal account to Copperfield Timberlake, which Copperfield Timberlake then used to make its payments to the Bank. Those contributions, however, are not evidence that raises a fact issue as to Julka's defense of payment on the guaranty, because that agreement required personal payment to the Bank, not payment from Copperfield Timberlake on the underlying note that the guaranty secured. Although Julka transferred personal funds to Copperfield Timberlake for it to make payments, Copperfield Timberlake made those payments to the Bank on behalf of the corporation, not in satisfaction of Julka's personal obligation. As a result, those payments are attributable solely to Copperfield Timberlake, and not to Julka.

■ Julka formed Copperfield Timberlake as a Delaware limited liability corporation, and Orange Place, LLC, an Ohio limited liability corporation, is its only member. Julka, who is president of both LLCs, structured these entities to take advantage of the protections afforded by the corporate form, including those that protect him from personal liability on the note beyond the individual obligations that he undertook as guarantor. *See* DEL. CODE ANN. tit. 6, § 18–303; *accord* TEX. BUS. ORGS. CODE ANN. § 101.002(a). "A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contrac-

tual obligations." *Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 372 (Tex. App.—El Paso 2010, no pet.) (citing *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006)); *accord Thomas v. Hobbs*, C.A. 04C–02–010–RFS, 2005 WL 1653947, at *2 (Del. Super Ct. Apr. 27, 2005).

■ This shield stems from the presumption of legal separateness that exists between a limited liability company and its members. *ACS Partners, LLC v. Gross*, No. 01–11–00245–CV, 2012 WL 1655547, at *3 (Tex. App.—Houston [1st Dist.] May 4, 2012, no pet.) (mem. op.) (citing *Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 250 (Tex. App.—Houston [1st Dist.] 2005, no pet.)); *see Roseton OL, LLC v. Dynegy Holdings, Inc.*, C.A. 6689–VCP, 2011 WL 3275965, at *15 & n.110 (Del. Ch. July 29, 2011). Consequently, members are not individually liable for the LLC's debts or other liabilities absent a separate agreement in the member's individual capacity. *See* TEX. BUS. ORGS. CODE ANN. § 101.114; DEL. CODE ANN. tit. 6, § 18–303. But that separateness means that contributions made to the company become the company's assets; they are no longer the personal assets of the company's members. *See Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 331 (5th Cir. 1984); *Long Island Owner's Ass'n v. Davidson*, 965 S.W.2d 674, 681 (Tex. App.—Corpus Christi 1998, writ denied); *accord Poore v. Fox Hollow Enters.*, C.A. 93A–09–005, 1994 WL 150872, at *2 (Del. Super. Ct. Mar. 29, 1994).

■ In rare circumstances, a court may disregard the corporate form and hold its agent subject to individual liability, or vice versa. *Trustees of Arden v. Unity Constr. Co.*, C.A. 15025, 2000 WL 130627, at *3 (Del. Ch. Jan. 26, 2000); *see also Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 506 (Tex. App.—Houston [1st Dist.] 2012,

pet. dism'd) (explaining that corporate veil may be pierced and liability imposed on corporate officer if owner is alter ego of corporation and causes corporation to commit fraud for direct personal benefit of owner). No such circumstances are alleged to exist here. Because of the presumptive separateness of the limited liability company, Julka's subjective intent that Copperfield Timberlake's loan payments during this period count toward either satisfying his personal guaranty obligation or showing that the Bank knew that Julka had provided Copperfield Timberlake with money so that it could make payments due on its note does not raise a fact issue on either of Julka's affirmative defenses.

Julka's reliance on *Warrior Constructors, Inc. v. Small Business Investment Co. of Houston*, 536 S.W.2d 382 (Tex. Civ. App.—Houston [14th Dist.] 1976, no writ), is misplaced. In *Warrior*, the guarantor directly made payments on the underlying note. *Id.* at 385. The Court held that the payments offset the guarantor's liability because they originated from the guarantor and the lender accepted them. *Id.* In contrast, Copperfield Timberlake made the payments on which Julka seeks to rely to satisfy his guaranty obligations. Because the evidence establishes that Copperfield Timberlake, not Julka, made the payments to the Bank before the default occurred, the trial court properly concluded that Julka failed to raise a fact issue to defeat the Bank's traditional and no-evidence summary judgment on the guaranty.

## CONCLUSION

We hold that the trial court did not err in granting summary judgment in favor of the Bank. We therefore affirm the judgment of the trial court.