**Opinion issued January 30, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00429-CV

———————————

## HERMAN MILLER AND BRIAN E. DUKE, Appellants

## V.

## PAWNEE LEASING CORPORATION, Appellee

On Appeal from the County Court at Law No. 3
Tarrant County, Texas[1]
Trial Court Case No. 2016-007112-3

---

[1] The Texas Supreme Court transferred this appeal to this Court from the Court of Appeals for the Second District of Texas. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases between courts of appeals).

## MEMORANDUM OPINION

After Kingdom Energy Services, LLC ("KES")[2] defaulted on an equipment lease, appellee, Pawnee Leasing Corporation ("Pawnee"), sued KES for breach of the lease and sued KES's guarantors for breach of the guaranty. In this appeal, appellant, Herman Miller, as guarantor, challenges the trial court's order granting summary judgment in favor of Pawnee on its suit against him for breach of the guaranty, and Miller's counsel, Brian E. Duke, challenges the trial court's order granting Pawnee's motion for sanctions.[3] In two issues, Miller contends that the trial court erred in granting summary judgment because he raised genuine issues of material fact, and Duke contends that the trial court erred in imposing sanctions.

We affirm.

## Background

In May 2014, Guy Chaney, Leo Bernal, and Miller formed KES.[4] Chaney owned a 60 percent stake in KES, and Bernal and Miller each owned 20 percent. On September 10, 2014, Chaney, on behalf of KES, executed a "finance lease" agreement (the "Lease")[5] with Pawnee's predecessor-in-interest, Ability Capital

---

[2]      KES is not a party to this appeal.

[3]      *See* TEX. CIV. PRAC. & REM. CODE § 10.001.

[4]      Chaney and Bernal are not parties to this appeal.

[5]      "A finance lease is a three-party transaction." *Excel Auto & Truck Leasing, L.L.P. v. Alief Indep. Sch. Dist.*, 249 S.W.3d 46, 63–64 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (Keyes, J., dissenting). The Uniform Commercial Code defines

Solutions ("Ability").[6] Under the terms of the Lease, Ability agreed to provide financing to KES to obtain rock-drilling equipment for use in KES's business operations. In exchange, KES agreed to pay $1,760.48 in monthly rent for a term of 48 months.

To induce Ability to enter into the Lease, Chaney, Bernal, and Miller personally guaranteed KES's performance of its obligations. The first page of the Lease contains a guaranty (the "Guaranty") as follows, in pertinent part:

> For the purpose of this Guaranty "you" means the undersigned Guarantors. You have an interest in the Lessee named above [KES] . . . , and we, the Lessor [Ability], would not enter into this Lease . . . without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Lessee's [KES's] obligations under the Lease . . . .

The Lease form provides spaces for two guarantors. In those spaces, Chaney and Bernal are identified as guarantors and their home addresses in Seminole, Texas, appear. On September 10, 2014, Chaney and Bernal each signed the guaranty.

Miller signed as a guarantor on an attached page, the "Equipment Lease Guaranty," which identifies Ability as Lessor and KES as Lessee and provides, in pertinent part:

---

a "finance lease" as a lease in which the lessor does not select, manufacture, or supply the goods; the lessor acquires the goods or the right to possession and use of the goods in connection with the lease; and certain conditions are met. TEX. BUS. & COM. CODE § 2A.103(7).

[6] Ability is not a party to this appeal.

3

> This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor", in favor of above referenced Lessor. Whereas it is contemplated that Lessor may enter into a lease and other related agreement, hereinafter collectively referred to as "Lease" with the above referenced Lessee, and whereas, the Guarantor(s) has an interest, financial or otherwise, in Lessee and wishes to induce the Lessor to make this Lease and purchase the equipment for the use of the Lessee, knowing that the Lessor is relying on the Guaranty as a precondition to making the Lease, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lessor. . . all payments and other obligations owed by the Lessee to the Lessor under the Lease . . . .
>
> IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT. BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.

Underneath, Miller is identified as "Guarantor" and his home address in Oklahoma appears, along with his signature. The signature block does not include a designated space for a date and none is included.

Also attached to the Lease is "Schedule A," which identifies the leased equipment and includes a "Clarification of Lessee Ownership and Authorization." On September 10, 2014, Chaney signed Schedule A, on behalf of the "owners" of KES, who are identified in the Schedule as Chaney (60%), Bernal (20%), and Miller (20%).

On September 16, 2014, in accordance with the terms of an April 25, 2013 "Master Agreement" between Ability and Pawnee, Ability assigned its rights under the Lease, and all attendant rights, to Pawnee (the "Assignment").

4

In July 2015, KES defaulted on the Lease. Pawnee then sued KES for a breach of contract, alleging that it had defaulted on the Lease by failing to pay the monthly installments as agreed. After Pawnee demanded payment from KES and it failed or refused to pay the outstanding sums due, Pawnee accelerated the maturity of the Lease and declared the entire unpaid balance due. Pawnee sought damages in the amount of $76,652.42. Pawnee also sued Chaney, Bernal, and Miller, alleging that they, as guarantors, were each personally and unconditionally liable for the payment of KES's obligations. Subsequently, Pawnee settled its claims with KES and Chaney, and Pawnee obtained a summary judgment in its favor against Bernal. Only its claims against Miller are at issue in this appeal.

With respect to Miller, Pawnee moved for a traditional summary judgment on its claim for breach of the guaranty. Pawnee asserted that its evidence conclusively established the underlying Lease contract between Pawnee and KES, that Pawnee performed its obligations under the Lease, and that KES breached the agreement by failing to pay as agreed under the terms of the Lease. Pawnee further asserted that the evidence conclusively established that Miller guaranteed KES's performance under the Lease and that Miller failed to cure the default.

In his summary-judgment response, Miller denied having "ever executed a guaranty for any obligation of KES." In his affidavit attached to his response, Miller also testified that he "never signed or executed any financial documents,

5

individually, as manager or member of KES" and "never signed any guaranty of any lease of KES." At a hearing on Pawnee's motion for summary judgment, the trial court found that Miller's assertions created a fact issue, and the trial court denied the motion for summary judgment.

Subsequently, Pawnee deposed Miller. Miller testified regarding the roles that he, Chaney, and Bernal had each played in the formation and operation of KES. Miller testified that he acted as a general foreman and that his role in forming KES was solely to provide contacts in the power line industry. Chaney provided the financial resources to form and operate KES. Bernal provided industry-specific business acumen and oversaw operations. Miller also noted that Bernal's creditworthiness served as a "backup" to Chaney in obtaining financing for KES.

Miller further testified that he never signed any credit applications, provided any financial statements or tax returns, or borrowed any money on behalf of KES. According to Miller, Chaney's lawyer advised that Miller not sign anything pertaining to the purchase or rental of equipment because Miller lacked creditworthiness and his participation would have negatively affected the interest rates that KES could obtain. Miller testified that he returned to his previous employer just two weeks after he began working for KES because Chaney failed to pay him as promised and he was no longer with KES when it executed the Lease. He did not know how Pawnee had obtained the copies of his tax returns that it

6

presented during his deposition. Miller later admitted, however, that he had signed the Guaranty at issue in this case:

Q. You understand in this lawsuit that the allegation has been made that you've guaranteed this debt; is that correct?

A. Yes. That's what I'm told.

Q. Okay. Do you have any idea who would have signed—I'm assuming that you're claiming that you did not sign the contract, right?

A. If I did sign it, I was led under the obligation [sic] that it was not a guarantee. It was for me to actually sign for equipment.

Q. Okay. Well, let's look at it, because there's a difference there. I'm going to mark this as Exhibit 1 [the guaranty] and just ask, sir, if this is your signature.

A. Yes, that's my signature.

Q. Okay. So you did sign this document?

A. Yeah.

. . . .

Q. Okay. So no dispute that you signed it, just a dispute as to you didn't really understand what you were signing; is that correct?

A. Correct.

Miller having admitted that he signed the Guaranty, Pawnee filed a Second Motion for Summary Judgment, asserting that it was entitled to judgment against him on its claim. Pawnee asserted that its evidence conclusively established the underlying Lease contract between Pawnee and KES, that Pawnee had performed its obligations under the Lease, and that KES had breached the agreement by failing to pay as agreed under the terms of the Lease. Pawnee further asserted that the evidence conclusively established that Miller had guaranteed KES's performance

7

under the Lease, that Miller admitted that he signed the Guaranty, and that Miller had failed to cure KES's default. As its summary-judgment evidence, Pawnee attached a transcript of Miller's deposition testimony; copies of the Lease, the Guaranty, the Assignment, and a statement of KES's account; and the affidavit of its custodian of records, Kenny Fitzgerald. In his affidavit, Fitzgerald testified:

4.  On or about September 10, 2014, [KES], as Lessee, and [Ability], as Lessor, executed a Lease Agreement, . . . whereby [Ability] financed equipment, hereinafter referred to as the "Equipment," for [KES] to use in its business operations. In conjunction with said Agreement, [Miller], and two other guarantors each executed a Personal Guaranty ("Guaranty") securing payment in the event of [KES's] default. . . . Subsequently, [Ability] assigned the Agreement and all rights thereto to [Pawnee] through an assignment contract between [Ability] and [Pawnee]. . . . While the Assignment purports to assign a lease dated July 24, 2014, this is clearly a typographical error because the contract numbers are identical as evidenced by the form letter attached to the Assignment.

    Further, by way of my personal knowledge of the facts of this Account and by virtue of my review of the records, I know that the Lease and Guaranty at issue are the contracts that were assigned to Pawnee.

5.  Under the Agreement, [KES] was obligated to make forty-eight (48) consecutive monthly payments. . . .

6.  [KES] defaulted under the terms of the Agreement by failing to make the payments due in or around July 2015 and thereafter has failed and refused to pay all other monthly installments due under the terms of the Agreement. . . .

7.  [Pawnee] has made numerous demands upon [KES] for the past due installments under the Agreement, but [KES] has failed and refused to pay said past due installments or any part thereof. Further, [Pawnee] made demand upon Miller for payment on the

8

amounts due and owing, but Miller has failed to pay the amounts due.

8. [Pawnee] has accelerated the maturity of the Agreement in accordance with the terms of the Agreement, and has declared the entire unpaid balance due and owing.

9. At the time of filing suit, the balance due on [KES's], and by way of Guaranty, Miller's account was $76,652.42, with interest . . . . Subsequent to the filing of suit, a settlement payment was made by one of Miller's co-guarantors in the amount of $40,000.00. . . .

10. After all just and lawful offsets and credits, a balance of $38,217.39 remains on Miller's account as of February 28, 2017. The claim of [Pawnee] against Herman Miller is within my knowledge just and true in the amount of $38,217.39. . . .

Pawnee also moved for sanctions, in the form of attorney's fees and costs, against Miller and his counsel, Duke. Pawnee complained that Miller had filed a summary-judgment response and affidavit containing misrepresentations and false statements. And, after Pawnee provided Miller with evidence showing that the statements were false and provided an opportunity to cure, Miller elected not to make corrections. Pawnee complained that, after the trial court expressly denied Pawnee's first motion for summary judgment based on Miller's denial that he had ever signed a guaranty, Miller admitted having signed the Guaranty at issue. Pawnee asserted that Miller's false statements caused it to incur increased, unnecessary expenses and attorney's fees.

In his response to Pawnee's Second Motion for Summary Judgment and its motion for sanctions, Miller asserted that Pawnee's evidence was insufficient to

9

establish its right to judgment as a matter of law. He asserted that the Lease was dated September 10, 2014; however, the assignment through which Pawnee claimed its rights referred to a lease dated July 24, 2014. In addition, he claimed that the Guaranty pertaining to him is a separate document that is not independently dated and does not specify that it relates to the Lease at issue.

Miller again asserted that he "never signed any guaranty of any lease of KES, or any other guaranty, note or obligation of [KES], either individually or as a member." He conceded that the Guaranty appeared to contain his signature. He asserted, however, that he had "no memory of signing such a document or agreeing to any guaranty," and thus he could "only speculate as to how [Pawnee] came into possession of the copy, and as to why what appears to be his signature appears on the copy presented." He conceded that he shared his financial information and tax returns with Chaney and Bernal. He asserted, however, that he never authorized them to give the information to Pawnee to secure the Lease. Miller attached his affidavit, in which he testified:

2. I did not agree to guarantee the lease that is the subject of this lawsuit. To my knowledge, I did not intentionally sign a document whereby I agreed to guarantee this lease or any other.

3. The signature on the copy claimed to be in the possession of [Pawnee's] records custodian appears to be my signature, but I do not recall signing the document I knew to be a guarantee.

4. Because I have not been presented with a date on which I was supposed to have signed it, or the circumstances, and I have not seen an original, I can only speculate as to how my signature

> appears on [Pawnee's] copy, when the document was signed, and what information appears on the original.
>
> 5. Since they expelled me from [KES] on December 9, 2014, I have had limited contact with [Chaney] and [Bernal]. . . .

Pawnee objected to Miller's affidavit on the ground that it did not constitute competent summary-judgment evidence. Specifically, Pawnee asserted that Miller, in paragraphs 2 and 3, stated that he did not sign the Guaranty, but he also stated that he may have unintentionally signed it. The trial court sustained Pawnee's objection and struck the second and third paragraphs of Miller's affidavit.

After a hearing, the trial court granted Pawnee's Second Motion for Summary Judgment, awarding Pawnee damages against Miller in the amount of $38,217.39. The trial court also granted Pawnee's motion for sanctions, finding that Miller's counsel, Duke, had unnecessarily prolonged litigation by filing a summary-judgment response and affidavit containing misrepresentations and false statements of fact, i.e., that Miller did not sign the Guaranty, which he failed to correct after notice. The trial court ordered that Duke reimburse Pawnee $3,100.00 in attorney's fees and $335.00 in court-reporter fees.

11

## Summary Judgment

In issue one, Miller argues that the trial court erred in granting Pawnee's Second Motion for Summary Judgment on its claim against him for breach of the Guaranty because he "raised material questions of fact."[7]  *See* TEX. R. CIV. P. 166a(c).

### A.      *Standard of Review and Principles of Law*

We review a trial court's summary judgment de novo.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor.  *Id.*  If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious.  *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.— Houston [1st Dist.] 2005, pet. denied).

In a traditional summary-judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law.  *See* TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v.*

---

[7]      Although Miller also appears to challenge the trial court's summary judgment with respect to Pawnee's breach-of-contract claim against KES, the record shows that Pawnee settled its claim against KES prior to filing its Second Motion for Summary Judgment.  Miller substantively challenges Pawnee's claim against him for breach of the Guaranty, and KES's default is subsumed within that analysis.

*Harrison Cty. Hous. Fin. Corp*., 988 S.W.2d 746, 748 (Tex. 1999). When a plaintiff moves for summary judgment on its own claim, the plaintiff must conclusively prove all essential elements of its cause of action. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

To be entitled to a summary judgment on its breach-of-guaranty claim against Miller, Pawnee was required to prove (1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract, (3) the occurrence of the condition upon which liability is based, and (4) a failure or refusal on the guarantor's part to perform as promised. *Julka v. U.S. Bank Nat'l Ass'n*, 516 S.W.3d 84, 87 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Gold's Gym Franchising LLC v. Brewer*, 400 S.W.3d 156, 160 (Tex. App.—Dallas 2013, no pet.). To be enforceable, a contract must contain terms sufficiently certain to enable a court to determine the rights and responsibilities of the parties. *N.&W. Ins. Co. v. Sentinel Inv. Grp., LLC*, 419 S.W.3d 534, 538 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

**B.**    *Analysis*

Pawnee's summary-judgment evidence shows that, on September 10, 2014, Chaney, on behalf of KES, executed the Lease with Ability. Schedule A reflects that Chaney represented and warranted that he possessed the legal right and authority to execute the Lease on behalf of the "owners" of KES, identified in the Schedule as Chaney (60%), Bernal (20%), and Miller (20%). Under the terms of the Lease, Ability agreed to provide financing to KES to obtain rock-drilling equipment. In exchange, KES agreed to pay $1,760.48 in monthly rent for a term of 48 months. Thus, the evidence shows, and Miller does not dispute, that the underlying Lease constitutes a valid, enforceable agreement. Further, Miller does not dispute its terms. *See Julka*, 516 S.W.3d at 87 (holding that movant must prove terms of underlying contract); *see also Norris v. Tex. Dev. Co.*, 547 S.W.3d 656, 662 (Tex. App.— Houston [14th Dist.] 2018, no pet.) (upholding summary judgment on breach-of-guaranty claim, in part, because record contained terms of underlying agreement).

Fitzgerald testified that KES defaulted on the Lease by failing to make the payments due in July 2015 and thereafter, that the remaining balance on KES's account at the time the suit was filed was $76,652.42, and, after applying a credit for Chaney's settlement payment, there remained an outstanding balance of $38,217.39. Thus, the summary-judgment evidence shows, and Miller does not dispute, that KES defaulted on the Lease. *See Julka*, 516 S.W.3d at 87 (holding that movant must

14

prove occurrence of condition upon which liability is based); *see also Norris*, 547 S.W.3d at 662. Further, Miller does not dispute the amount of the default.

Fitzgerald further testified, and Miller does not dispute, that Pawnee made demand upon Miller for payment of the outstanding amount due under the Lease, but that Miller refused to cure the default. *See Julka*, 516 S.W.3d at 87 (holding that movant must prove failure or refusal on guarantor's part to perform as promised); *see also Norris*, 547 S.W.3d at 662.

Miller challenges Pawnee's summary-judgment evidence as to the existence and ownership of the Guaranty contract. *See Julka*, 516 S.W.3d at 87.

The evidence shows that Fitzgerald testified in his affidavit that, in conjunction with the Lease, Chaney, Bernal, and Miller each executed a personal guaranty. The first page of the Lease contains a guaranty as follows, in pertinent part:

> For the purpose of this Guaranty "you" means the undersigned Guarantors. You have an interest in the Lessee named above [KES] . . . , and we, the Lessor [Ability], would not enter into this Lease . . . without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Lessee's obligations under the Lease . . . .

The Lease form provides spaces for two guarantors. In those spaces, Chaney and Bernal are identified as guarantors and their home addresses in Seminole, Texas, appear. On September 10, 2014, Chaney and Bernal each signed the guaranty.

15

Miller signed as a guarantor on an attached page, the "Equipment Lease Guaranty," which identifies Ability as Lessor and KES as Lessee and provides, in pertinent part:

> This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor", in favor of above referenced Lessor. Whereas it is contemplated that Lessor may enter into a lease and other related agreement, hereinafter collectively referred to as "Lease" with the above referenced Lessee, and *whereas, the Guarantor(s) has an interest, financial or otherwise, in Lessee and wishes to induce the Lessor to make this Lease and purchase the equipment for the use of the Lessee*, *knowing that the Lessor is relying on the Guaranty as a precondition to making the Lease*, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lessor. . . all payments and other obligations owed by the Lessee to the Lessor under the Lease . . . .
>
> IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT. BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.

(Emphasis added.) Underneath, identified as "Guarantor," is Miller's name, home address in Oklahoma, and his signature. Thus, Miller, as a Guarantor, in order to induce Ability to enter the Lease to provide equipment to KES, also unconditionally guaranteed KES's performance of its obligations under the Lease. Thus, the summary-judgment evidence establishes that Miller executed a contract of guaranty. *See id.* (movant must prove existence of guaranty contract).

Fitzgerald further testified that Ability assigned the Lease and all rights, which includes the guaranty agreements, to Pawnee through an assignment. The

16

Assignment states that, on September 16, 2014, in accordance with the terms of an April 25, 2013 "Master Agreement" between Ability and Pawnee, Ability assigned its rights under an "FMV Lease, 7/24/2014 [sic]" with KES to Pawnee. Although, as Miller notes, the assignment purports to assign a lease dated "July 24, 2014," Fitzgerald testified that this is "clearly a typographical error" because the contract numbers are identical as evidenced by the form letter attached to the Assignment. The attached form letter is from Pawnee to KES and Chaney, dated "September XX [sic], 2014," and concerns "Lease or Equipment Finance Agreement No. 2014081102" and Guaranty. And, the Lease reflects that it is "Contract #: 2014081102." Thus, the summary-judgment evidence shows that Pawnee owns the Guaranty. *See id.* (movant must prove ownership of guaranty contract).

Because Pawnee's summary-judgment evidence establishes its right to judgment, the burden shifted to Miller to present evidence raising a genuine issue of material fact precluding summary judgment. *See Siegler*, 899 S.W.2d at 197.

As his summary-judgment evidence to raise a fact issue, Miller presented his affidavit. In those portions of Miller's affidavit remaining after the trial court sustained Pawnee's objections,[8] he testified:

> 4. Because I have not been presented with a date on which I was supposed to have signed it, or the circumstances, and I have not seen an original, I can only speculate as to how my signature

---

[8] Miller does not challenge the trial court's order sustaining Pawnee's objections.

17

appears on [Pawnee's] copy, when the document was signed, and what information appears on the original.

5. Since they expelled me from [KES] on December 9, 2014, I have had limited contact with [Chaney] and [Bernal]. . . .

Miller argues that because the Guaranty he signed is not dated, this creates a fact issue that precludes summary judgment, namely, as to whether the Guaranty is part of the Lease agreement or guarantees the Lease at issue. He asserts on appeal that, "[a]lthough the lack of a date alone would not raise a fact issue on the existence of the [Guaranty] contract, every other signed page" is dated.

The essential terms of a guaranty agreement are (1) the parties involved, (2) a manifestation of intent to guaranty the obligation, and (3) a description of the obligation being guaranteed. *Material P'Ships, Inc. v. Ventura*, 102 S.W.3d 252, 261 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Park Creek Assocs., Ltd. v. Walker*, 754 S.W.2d 426, 429 (Tex. App.—Dallas 1988, writ denied). Separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument and are to be read and construed together. *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981).

As discussed above, the evidence shows that Chaney, Bernal, and Miller each signed a guaranty agreement, each clearly indicating an intent to guarantee the underlying Lease, which described the obligation being guaranteed and identified Ability as the "Lessor" and "KES" as the Lessee. Miller admits that he signed the

18

Guaranty. In addition, Chaney signed Schedule A, attached to the Lease, on behalf of the "owners" of KES, who are identified in the Schedule as Chaney (60%), Bernal (20%), and Miller (20%). Construed together, these documents demonstrate the essential terms of a guaranty agreement. *See id.*; *Material P'ships*, 102 S.W.3d at 261. Although Miller asserts that he was no longer working for KES as the time that the Lease was executed in September 2014, Miller asserts in his affidavit, and the evidence otherwise shows, that he remained an owner of KES and was not "expelled" until December 2014.

Miller complains that he "does not recall signing" the Guaranty and that he did not intentionally or knowingly agree to guarantee KES's performance of the Lease. "The role of the courts is not to protect parties from their own agreements. . . ." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 810–11 (Tex. 2012). One who signs a contract "must be held to have known what words were used in the contract and to have known their meaning, and he must also be held to have known and fully comprehended the legal effect of the contract." *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 146 (Tex. App.—Houston [1st Dist.] 1986, no writ); *see, e.g.*, *Navari, LLC v. Sysco Cent. Tex., Inc.*, No. 03-18-00006-CV, 2019 WL 578565, at *2 (Tex. App.—Austin Feb. 13, 2019, no pet.) (mem. op.) (holding non-movant's failure to recall adding his digital

19

signature to personal guaranty did not contravene evidence that he did so and upholding summary judgment on claim for breach of guaranty).

Without Miller having presented any other evidence to raise a fact issue, we conclude that Pawnee conclusively established its right to judgment on its claim against Miller for breach of the Guaranty. Accordingly, we hold that the trial court did not err in granting summary judgment in favor of Pawnee. *See* TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick*, 988 S.W.2d at 748.

**Sanctions**

In issue two, Duke argues that the trial court erred in awarding Pawnee sanctions "based on inferences on disputed questions of fact and an improper presumption of bad faith." The record shows that the trial court imposed sanctions against Duke pursuant to Texas Civil Practice and Remedies Code section 10.001(3). *See* TEX. CIV. PRAC. & REM. CODE § 10.001(3).

### A. *Standard of Review and Principles of Law*

We review a trial court's imposition of sanctions for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). A trial court abuses its discretion if it acts without reference to any guiding rules and principles or if, under all the circumstances of the particular case, the trial court's action was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We will uphold a trial court's imposition of sanctions if some evidence

20

supports its decision. *Nath v. Tex. Children's Hosp*., 446 S.W.3d 355, 361 (Tex. 2014); *see also Chevron Phillips Chem. Co. P.P. v. Kingwood Crossroads, L.P*., 346 S.W.3d 37, 74 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (noting that if movant asserts that opposing party violated discovery order in ten ways, sanctions are upheld if record supports any one violation).

Civil Practice and Remedies Code Section 10.004(a) provides that if a trial court determines that a person has signed a pleading or motion in violation of Section 10.001, it may impose a sanction on the person, a party represented by the person, or both. TEX. CIV. PRAC. & REM. CODE § 10.004(a). As pertinent here, section 10.001(3) provides:

> The signing of a pleading or motion . . . constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:
>
> . . . .
>
> (3)    each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . [.]

*Id*. § 10.001(3). "Under chapter 10 . . . [the movant is] not required to specifically show bad faith or malicious intent, just that [the pleader] certified he made a reasonable inquiry into all of the allegations when he did not and that he certified that all the allegations in the [pleading] had evidentiary support, or were likely to have evidentiary support, when some allegations did not." *Low*, 221 S.W.3d at 617;

21

*see Gomer v. Davis*, 419 S.W.3d 470, 481 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The sanction imposed, which must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated, may include an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees. TEX. CIV. PRAC. & REM. CODE § 10.004(c)(3).

**B.** *Analysis*

Here, Pawnee asked the trial court to impose sanctions, pursuant to section 10.001, in the form of attorney's fees and costs, against Miller and Duke. Pawnee complained that Miller filed a summary-judgment response and affidavit containing misrepresentations and false statements. And, after Pawnee provided Miller with evidence showing that the statements were false and provided an opportunity to cure, Miller elected not to make corrections. Pawnee complained that, after the trial court expressly denied Pawnee's first motion for summary judgment based on Miller's unequivocal statements that he had never signed a guaranty for KES, Miller admitted having signed the Guaranty at issue. Pawnee asserted that Miller's false statements caused it to incur increased, unnecessary expenses and attorney's fees. Pawnee sought its attorney fees in the amount of $3,100.00, for prosecuting its first motion for summary judgment, and $335.00 for its court-reporter fees attributable to having to take Miller's deposition.

22

After a hearing on Pawnee's motion for sanctions, the trial court found that Miller's counsel, Duke, "filed a Summary Judgment Response and Affidavit containing misrepresentations and false statements of fact." And, after Pawnee provided Duke with evidence that the statements were false and afforded him an opportunity to cure, Duke failed to correct the statements. The trial court concluded that "this sanctionable conduct inappropriately prolonged litigation, resulting in unnecessary expenses" for Pawnee. The trial court granted Pawnee's motion and awarded it reasonable and necessary attorney's fees in the amount of $3,100.00 and costs of $335.00. The trial court found that no lesser sanctions could be imposed as punishment to deter repetition of the conduct.

Again, we will uphold a trial court's imposition of sanctions if some evidence supports its decision. *Nath*, 446 S.W.3d at 361.

The record shows that Pawnee attached a copy of Miller's signed Guaranty to its first motion for summary judgment. Duke then signed and filed, on behalf of Miller, a response to Pawnee's first motion for summary judgment, in which he asserted that Miller "denies having ever executed a guaranty for any obligation of KES." Duke asserted that "a dispute of material fact is raised by the following assertions in Miller's affidavit: . . . . Miller never signed or executed any financial documents individually, as manager or member of KES, or in any capacity on behalf of KES. More specifically, he never signed any guaranty of any lease of KES, or

23

other guaranty, note or obligation of [KES], either individually or as a member." On June 9, 2017, at a hearing on Pawnee's first motion for summary judgment, the trial court expressly denied Pawnee summary judgment based on Miller's denial in his response and affidavit.

Pawnee's evidence shows, however, that Miller, during his August 23, 2017 deposition, admitted that he signed the Guaranty at issue in this case:

Q.    . . . . I'm going to mark this as Exhibit 1 [the Guaranty] and just ask, sir, if this is your signature.

A.    Yes, that's my signature.

Q.    Okay.  So you did sign this document?

A.    Yeah.

. . . .

Q.    Okay.  So no dispute that you signed it, just a dispute as to you didn't really understand what you were signing; is that correct?

A.    Correct.

The record further shows that, on January 23, 2018, Duke, on behalf of Miller, filed a response to Pawnee's Second Motion for Summary Judgment, again stating that Miller "never signed any guaranty of any lease of KES, or any other guaranty, note or obligation of [KES], either individually or as a member."  Duke asserted that, although the signature on the Guaranty "appears to be" Miller's, he could "only speculate" as to how his signature was obtained.

We conclude that the evidence supports the trial court's finding at the hearing on the motion for sanctions that Duke violated section 10.001(3), i.e., that each

24

allegation or factual contention in a pleading or motion have evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery. By filing the summary-judgment response and attached affidavit, Duke certified that, to the best of his knowledge, information, and belief, the factual contentions therein, i.e., that Miller did not sign a guaranty with respect to KES, either had, or was likely to have, evidentiary support. As discussed, a "reasonable inquiry" into these factual assertions would have proven otherwise. *See Low*, 221 S.W.3d at 615–17; *see also* TEX. CIV. PRAC. & REM. CODE § 10.001(3).

We conclude that there is some evidence to support the trial court's decision to impose sanctions against Duke. Accordingly, we hold that the trial court did not err in granting Pawnee's motion for sanctions.[9] *See Low*, 221 S.W.3d at 617.

## Conclusion

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Keyes and Kelly.

---

[9] Duke also challenges the trial court's sanctions order based on Texas Rule of Civil Procedure 13. Because the sanctions order is sustainable under Section 10.001, we need not address challenges to other possible bases for the sanctions award. *See Law Offices of Windle Turley, P.C. v. French*, 164 S.W.3d 487, 492 (Tex. App.—Dallas 2005, no pet.).