# NO. 12-21-00009-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CARL OWENS, JR., CONNIE OWENS, MICHAEL TERRY, AND SANDI TERRY, APPELLANTS* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW NO. 3* |
| *THE CITY OF TYLER, TEXAS, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Carl Owens, Jr., Connie Owens, Michael Terry, and Sandi Terry (collectively "the Lessees") appeal the trial court's order granting summary judgment against them and in favor of the City of Tyler, Texas. They present ten issues on appeal. We modify and affirm as modified.

## BACKGROUND

In 1946, the City constructed Lake Tyler. The City owns the land underneath the lake and the land surrounding the lake. The City subdivided portions of the land surrounding the lake for the construction of lake homes, buildings, and boat stalls. In 1953, the City leased the three contiguous lots that are the subject of this suit—Lots 18, 19, and 20 of the Peninsula Subdivision— to Dr. Howard Bryant. After a series of transfers and lease amendments, the Owenses, Kourt and Jamie Chatelain, and the Terrys became the current lessees of Lots 18, 19, and 20, respectively. The leaseholds do not extend into the lakebed.

However, the City generally allows the lessees to construct piers and boathouses. The Tyler Code of Ordinances, which is incorporated into the leases, requires that the lessee submit the proposed construction plan according to specific guidelines, pay a fee, and consent to an on-

site physical inspection. If satisfied with the construction plan, the Water Production and Water Quality Manager for the Tyler Water Utilities Division (Manager) will issue a building permit.

The Chatelains' lot is a pie-shaped lot in a cove with limited lake frontage. The Chatelains had an old pier and boathouse in place when they acquired the lease for Lot 19, but they removed them. On September 24, 2015, the Chatelains requested that the City approve their proposed plans for a new pier and boathouse and issue a construction permit.

On October 12, the Terrys, the lessees of Lot 20 whose leasehold shared the cove with the Chatelains, submitted a request for the City to authorize construction of a four-foot wide pier that would extend 160 feet into the cove. This pier would have essentially prevented the Chatelains' access to the lake. On October 23, the City denied the Terrys' request.

On October 22, the City sent a letter to the Owenses informing them of the Chatelains' request to approve a new pier and boathouse. The letter stated that the proposed boathouse would encroach on the Owenses' frontage, but "[u]nfortunately, due to the layout of the shoreline and of the other boathouses in this area, there is no other location for the [Chatelains'] proposed boathouse that will still provide access to the lake to the [Chatelains'] neighbor to the east on [the Terrys'] Lot 20." Carl Owens called the Manager and asked for a meeting. At the meeting, Owens expressed his discontent with the Chatelains' proposed pier and boathouse location. Owens believed that the new boathouse would adversely affect his view of the lake and the value of his property.

Consequently, in an attempt to maximize the interested parties' access to the lake, the Manager reoriented the location of the Chatelains' boathouse on their proposed construction plan and asked that the Chatelains resubmit their request. Thereafter, the Owenses' attorney sent a letter to the Chatelains demanding that they refrain from constructing the boathouse, alleging that the boathouse would encroach upon the Owenses' lot line extending from their property into the lake, and that the City never allowed a neighboring property owner to construct a boathouse across this extended property line. The Chatelains resubmitted their request in accordance with the Manager's suggestions. On February 10, 2017, the City issued a construction permit to the Chatelains.

Subsequently, the Owenses filed suit against the City and the Chatelains, and the Terrys intervened. They each adopted the others' pleadings. They brought several claims, seeking to enjoin the Chatelains' construction of their boathouse, along with actual and exemplary damages,

a declaratory judgment, injunctive relief, and attorney's fees. The trial court granted an ex parte temporary restraining order against the City and the Chatelains, temporarily halting the Chatelains' construction of their pier and boathouse.

The City filed a plea to the jurisdiction, asserting that it had governmental immunity and it should be dismissed from the suit for lack of subject matter jurisdiction. The trial court thereafter held a hearing on the Lessees' application for temporary injunction and the City's plea to the jurisdiction. The trial court denied the temporary injunction and the City's plea to the jurisdiction.[1] The City took an interlocutory appeal pursuant to Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code. Relying on *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427 (Tex. 2016) (*Wasson I*), we concluded that the claims against the City were barred by governmental immunity because they arose from the City's governmental, rather than proprietary, acts. Consequently, we reversed the denial of the City's plea to the jurisdiction, rendered judgment dismissing the claims against the City, and remanded the case for further proceedings.[2]

The Lessees' petitioned for review in the Texas Supreme Court. During the interim, the Supreme Court decided *Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142 (Tex. 2018) (*Wasson II*), which held that the City's immunity from a breach of contract claim depends on "the nature of the contract, not the nature of the breach." *Wasson II*, 559 S.W.3d at 149. As a result, the Supreme Court remanded the case for consideration under *Wasson II*.[3] On remand, we determined that the City's issuance of lakefront leases to private parties is a proprietary function, and, therefore, governmental immunity did not protect the City from the Lessees' suit for breach of the lease agreements.[4] We affirmed the denial of the City's plea to the jurisdiction and remanded the case for further proceedings.

On remand, the City filed a motion for traditional summary judgment and asked the trial court to order that the Lessees take nothing on their tort, breach of contract, and declaratory judgment claims. The City also filed a motion for a no evidence summary judgment asserting that

---

[1] The trial judge also recused himself and transferred the case to the Smith County Court at Law Number 3.

[2] *City of Tyler v. Owens*, 564 S.W.3d 38, 45-46, 49 (Tex. App.—Tyler 2017), *vacated*, 564 S.W.3d 850 (Tex. 2018) (*Owens I*).

[3] *Owens v. City of Tyler*, 564 S.W.3d 850, 851 (Tex. 2018) (per curiam).

[4] *City of Tyler v. Owens*, No. 12-16-00128-CV, 2019 WL 3024756, at *6 (Tex. App.—Tyler July 10, 2019, pet. denied) (mem. op. on remand) (*Owens II*).

3

the Lessees had no evidence to support their breach of contract and declaratory judgment causes of action. The Lessees responded to the motions and amended their pleadings to drop the tort claims in conformity with prior representations they would not be pursuing tort claims against the City. However, before the summary judgment hearing, the Lessees amended their pleadings again to add the tort claims of statutory fraud and violations of the Deceptive Trade Practices Act (DTPA). The Terrys also filed a motion for continuance.

Following a hearing, the trial court ruled on the parties' objections to the summary judgment evidence and granted the City's motions for summary judgment. In addition to granting the summary judgments, the order contained the following paragraph:

> The summary judgment ruling considers and includes the Deceptive Trade Practices and statutory fraud claims newly asserted by Plaintiffs and Intervenors against the City of Tyler, in August 2020. Additionally, the Court finds and orders that those same claims are estopped based on the prior proceedings in this case and because the City of Tyler has governmental immunity regarding such actions. This Order confirms the bench rulings previously made by Judge Rogers granting the City's Plea to the Jurisdiction regarding Plaintiffs' and Intervenors' tort claims verses (sic) the City of Tyler.

The trial court then severed the case against the City from the case against the Chatelains and granted a final judgment against the Lessees. This appeal followed.

## MOTION FOR SUMMARY JUDGMENT

In their first, second, third, and fourth issues, the Lessees urge the trial court erred in granting summary judgment on their breach of contract claims.

### Standard of Review

Because the grant of a summary judgment is a question of law, we review the trial court's summary judgment decision de novo. *See **Ft. Worth Transp. Auth. v. Rodriguez***, 547 S.W.3d 830, 837 (Tex. 2018).

In this case, the City moved for a no evidence summary judgment. *See* TEX. R. CIV. P. 166a(i). The motion must state the elements as to which there is no evidence, but the movant need not produce any proof in support of its no evidence claim. ***DeGrate v. Exec. Imprints, Inc.***, 261 S.W.3d 403, 407 (Tex. App.—Tyler 2008, no pet.). A no evidence summary judgment motion is properly granted if the nonmovant fails to bring forth more than a scintilla of evidence to raise a genuine fact issue as to an essential element of the nonmovant's claim on which the nonmovant

4

would have the burden of proof at trial. *Id.*; *see Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

The City also moved for traditional summary judgment. To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Priddy v. Rawson*, 282 S.W.3d 588, 592 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). When reviewing a summary judgment, we "must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

When, as here, a party moves for both traditional and no evidence summary judgment, and the determination of the no evidence summary judgment could make the grounds asserted in the traditional motion moot, we first review the trial court's ruling under the no evidence standard of review. *See Merriman v. XTD Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the trial court properly granted the no evidence motion, we do not consider the complaints raised regarding the traditional summary judgment motion. *Ridgway*, 135 S.W.3d at 600.

## Applicable Law

The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *Tamuno Ifiesimama v. Haile*, 522 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.–Houston [1st Dist.] 2009, pet. denied).

The construction of an unambiguous contract is a question of law for the court, which we may consider under a de novo standard of review. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). Our primary concern is to ascertain the true intent of the parties as expressed in the instrument. *Wood Care Ctrs., Inc. v. Evangel Temple Assembly of God of Wichita Falls, Tex.*, 307 S.W.3d 816, 820 (Tex. App.—Fort Worth 2010, pet. denied). When discerning the contracting parties' intent, courts must examine the entire agreement and give effect to each provision so that

5

none is rendered meaningless. *Id*. An unambiguous contract's meaning and intent is determined from the four corners of the document without the aid of extrinsic evidence. *Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 595 (Tex. App.—Dallas 2015, pet. denied). We give contract terms their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). We construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served and will avoid a construction which is unreasonable, inequitable, and oppressive when possible. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam).

Mere disagreement by the parties regarding contractual interpretation does not prove ambiguity. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018). Instead, contracts to which we can give definite or certain legal meaning are unambiguous and we construe them as a matter of law. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) ("If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous."); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996) ("The failure to include more express language of the parties intent does not create an ambiguity when only one reasonable interpretation exists."). We ascertain the parties' intentions by examining the entire writing and give effect to all provisions, so none are rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Green Meadow Oil & Gas Corp. v. EOG Res., Inc.*, 390 S.W.3d 625, 627 (Tex. App.—Dallas 2012, no pet.). We "presume parties intend what the words of their contract say" and interpret contract language according to its "plain, ordinary, and generally accepted meaning" unless the instrument directs otherwise. *URI, Inc.*, 543 S.W.3d at 764. We also ignore parol evidence that varies or contradicts the contract. *Id.* at 757 ("[E]xtrinsic evidence may only be used to aid the understanding of an unambiguous contract's language, not change it or "create ambiguity.").

**Analysis**

The Lessees contend that the City had a right to issue the construction permit to the Chatelains; however, they further urge that the issuance of the permit "breached promises that it had previously made to [the Lessees] that were a part of their contract with the City." The City asserts here, and in its motions for summary judgment, that the Lessees have no evidence the City breached the lease agreements.

6

It is undisputed that the lease agreements themselves do not contain any language regarding boathouses. However, the leases incorporate the City's ordinances. The Lessees contend the following Ordinances are pertinent:

> Leased Lots at the Lake shall cover the full length of the lot up to the waterfront . . .
>
> No more than one boathouse may be constructed on a residential lot . . .
>
> Approval for Construction required . . . In order to receive approval, a plat drawing must be submitted to the office of the Manager, on available forms identifying the lot, subdivision, owner and building, and containing the lot dimensions, the 100' setback line from the 378' elevation line, the exact location of existing and proposed structures in relation to all property lines including the 100' setback line . . . As applicable, plans for boathouses, piers, . . . and other structures must also be approved through the method described above. Approval for construction will be granted upon confirmation of a current lease on Lake Tyler lots, . . . and following a physical on-site inspection by a Lake Supervisor . . .

According to the Lessees, the City's issuance of the permit to the Chatelains prevents the Lessees from having full use of their lots up to the waterfront "as promised" by granting access to the boathouse from their water frontage. They further assert that their respective lots already had a boathouse and that the City's permit that would allow the Chatelains' boathouse to straddle their waterfronts violates the "one boathouse per residential lot" ordinance.

The Lessees urge that because the parties disagree as to whether the lease agreements were breached means that the terms are ambiguous. However, mere disagreement by the parties regarding contractual interpretation does not prove ambiguity. *URI, Inc.*, 543 S.W.3d at 763. In this case, the lease agreements and incorporated ordinances are not ambiguous.

It is undisputed that the leases do not extend into the body of the lake or onto the land beneath the surface of the lake. Furthermore, the ordinances do not prohibit the City from granting a permit to build a boathouse outside the boundaries of the leased lots. And the ordinances give the City exclusive authority and discretion over the lake and the lakebed.

The Chatelains' boathouse is not located within the boundaries of any of the leased lots themselves. As a result, the boathouse is not located on either the Terrys' or Owenses' lots "up to the waterfront." Access to the Chatelains' boathouse is from the lot they lease, not from either the Terrys' or Owenses' lots. According to the City, all boathouses are built on the land beneath the lake and not "on" the lots. It encourages us to construe the word "on" as "for" each residential

7

lot.[5]  However, reading the ordinance as written, we determine that each lot is currently limited to one boathouse.  The Chatelains' boathouse is only accessible from the Chatelains' lot. Furthermore, the boathouse is not located on the land "up to the waterfront," which would clearly violate the Lessees' respective property rights, because the boathouse is in the water.  And the City maintains the authority and discretion over what is built in the water.

The Terrys further urge that the City breached their lease by denying their request for a permit to add a boat lift to their existing cover and to extend their pier.  However, again, the Terrys cannot point to a lease provision that was violated when the City denied their permit.  None of the lease provisions nor ordinances require the Manager to approve the permit.

Because the Lessees provided no evidence that the City violated any provision of the lease agreement or incorporated ordinances, there is no evidence the City breached the contracts with the Lessees.  The trial court did not err in granting summary judgment on the breach of contract claims.  We overrule the Lessees' third issue.[6]

## JUDICIAL ESTOPPEL

In their first, fifth, sixth, and seventh issues, the Lessees urge the trial court erred in granting summary judgment on their tort claims.[7]  The City asserts that the Lessees' tort claims are barred by judicial estoppel, which is addressed in the Lessees' seventh issue.

### Applicable Law

Judicial estoppel is a common law principle that precludes a party from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a prior litigation.  *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 649 (Tex. App.—El Paso 1997, writ denied).  The purpose of judicial estoppel is to prevent fraud and to uphold the integrity of the judicial process.  *In re Estate of Huff*, 15 S.W.3d 301, 308–09 (Tex. App.—Texarkana 2000, no pet.).  Further, judicial estoppel is designed to prevent a party from "playing

---

[5] The City urges that no boathouse can be built on a residential lot because boathouses are necessarily built on the land beneath the lake.  However, the Terrys' boathouse straddles the shoreline, which means it is located both on the residential lot and on the land beneath the lake.

[6] Because we hold the trial court did not err in granting the no evidence motion for summary judgment on the breach of contract claims we need not address the first, second, and fourth issues regarding the breach of contract claims.  *See* TEX. R. APP. P. 47.1.

[7] In their first issue, the Lessees argue the trial court erred in granting summary judgment on all of their claims.

fast and loose" with the courts to suit the party's own purposes. *Stewart v. Hardie*, 978 S.W.2d 203, 208 (Tex. App.—Fort Worth 1998, pet. denied) (quoting *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996)). In other words, it is employed to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage. *Id*.

Judicial estoppel applies where (1) the party against whom estoppel is sought, (2) has alleged or admitted in his pleadings, an affidavit, or testimony, (3) under oath, (4) in a prior judicial proceeding, (5) a "deliberate, clear, and unequivocal," (6) assertion that is contrary to his current assertion, (7) not "made inadvertently or by mistake," or by "fraud or duress," (8) and that was either "successfully interposed in defense to [the prior] action or proceeding," or was made in relation to a "question necessary for the determination of [the] prior adjudication," and (9) is so inconsistent that its truth is disproved by the current assertion. *Acad. of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.,* 260 S.W.3d 529, 537 (Tex. App.—Tyler 2008, pet. denied).

## Analysis

At the time this case was before us in *Owens I* and *Owens II*, the Lessees' pleadings included causes of action for nuisance, tortious interference with contract, and negligence. However, at the hearing on the plea to the jurisdiction, the Lessees made the following representation to the trial court, "We are not going to pursue tort claims against the City and so we would not object to an order granting the plea to the jurisdiction as to tort claims against the City." The trial court responded, "That's granted. You prepare the Order. Keep going." Furthermore, in the Lessees' initial appellate brief, the Lessees stated they "are not attempting to recover against the City of Tyler for tort liability under the Texas Tort Claims Act." And on remand, the Lessees represented to this Court that this case "is a breach of contract case." In reliance upon these representations, we stated in *Owens I* the following:

> In its second issue, the City contends that the trial court erroneously denied its plea to the jurisdiction on the Owenses' and Terrys' tort claims against it, because Appellees have abandoned those claims. Appellees concede in their brief that they no longer pursue any tort claims against the City. Accordingly, we hold that Appellees abandoned these claims, and we need not examine whether such claims defeat the City's immunity.

*Owens I*, 564 S.W.3d at 47–48 (internal citations omitted).

After the City filed its motions for summary judgment, the Lessees amended their pleadings to eliminate the preexisting tort allegations. However, they later amended their

9

pleadings again to assert new claims for fraud in a real estate action and violations of the DTPA. They urge that these new causes of action are not torts because they are "statutory," and that, as a result, they are not estopped. We disagree.

The Lessees argue that their previous representations do not prevent them from bringing any tort claims and that, even so, the statutory causes of action are not torts. However, the Lessees clearly represented that they were not and would not be pursuing claims under the Texas Torts Claims Act, which waives immunity for tort actions against governmental entities. *See* TEX. GOV'T CODE ANN. § 311.034 (West 2013). Furthermore, the Texas Supreme Court has recognized that statutory torts do exist. *See **In re Xerox Corp.***, 555 S.W.3d 518, 523 (Tex. 2018); ***JCW Elecs., Inc. v. Garza***, 257 S.W.3d 701, 702 (Tex. 2008); ***F.F.P. Operating Partners, L.P. v. Duenez***, 237 S.W.3d 680, 682 (Tex. 2007); ***Sw. Bank v. Info. Support Concepts, Inc.***, 149 S.W.3d 104, 110-11 (Tex. 2004). In addition, several courts have held that the DTPA does not waive governmental immunity, which necessarily means a claim under the DTPA is a tort. *See **Amador v. City of Irving***, No. 05-19-00278-CV, 2020 WL 1316921, at *8 (Tex. App.—Dallas Mar. 20, 2020, no pet.) (mem. op.); ***Humana Ins. Co. v. Mueller***, No. 04-14-00752-CV, 2015 WL 1938657, at *3 (Tex. App.—San Antonio April 29, 2015, pet. denied) (mem. op.); ***City of Wylie v. Taylor***, 362 S.W.3d 855, 865 (Tex. App.—Dallas 2012, no pet.); ***Kojo Wih Nkansah v. Univ. of Tex. at Arlington***, No. 02-10-00322-CV, 2011 WL 4916355, at *4 (Tex. App.—Fort Worth Oct. 13, 2011, pet. denied) (mem. op.); ***Prof. Res. Plus v. Univ. of Tex., Austin***, No. 03-10-00524-CV, 2011 WL 749352, at *1 (Tex. App.—Austin Mar. 4, 2011, no pet.) (mem. op.); ***McBride v. Tex. Dep't of Criminal Justice***, Nos. 13-05-391-CV, 13-05-392-CV, 2008 WL 521002, at *7 (Tex. App.—Corpus Christi Feb. 28, 2008, pet. denied) (mem. op.); ***Belton v. Tex. Dep't of Criminal Justice***, No. 10-06-00142-CV, 2007 WL 475448, at *2 (Tex. App.—Waco Feb. 14, 2007, no pet.) (mem. op.); ***Univ. of Houston Main Campus v. Simons***, No. 01-02-00368-CV, 2002 WL 31388906, at *2 (Tex. App.—Houston [1st Dist.] Oct. 24, 2002, no pet.) (op.). The statutory fraud act also does not waive governmental immunity and is considered a tort. *See **Dallas Cty. v. Rischon Dev. Corp.***, 242 S.W.3d 90, 94-95 (Tex. App.—2007, pet. denied); ***Jefferson Cty. v. Bernard***, 148 S.W.3d 698, 701-02 (Tex. App.—Beaumont 2004, no pet.).

Because the Lessees' claims under the DTPA and statutory fraud act are torts and the Lessees represented they would not be pursuing tort claims against the City, the Lessees are

estopped from bringing these actions. As a result, the trial court did not err in granting summary judgment on this ground. We overrule the Lessees' seventh issue.[8]

**MOTION FOR CONTINUANCE**

In their eighth issue, the Lessees urge the trial court erred in denying their motion for continuance of the summary judgment hearing because there had not been an adequate time for discovery. Because the City filed a no evidence summary judgment, it was necessary that an adequate time for discovery had passed. *See* TEX. R. CIV. P. 166a(i).

**Standard of Review**

A party may move for no evidence summary judgment only "[a]fter adequate time for discovery." *Id.*; ***Specialty Retailers, Inc. v. Fuqua***, 29 S.W.3d 140, 145 (Tex. App.–Houston [14th Dist.] 2000, pet. denied). Rule 166a(i) does not require that discovery be completed before a party may move for no evidence summary judgment; the trial court may grant such a motion after "adequate time" for discovery. *See* ***Madison v. Williamson***, 241 S.W.3d 145, 155 (Tex. App.–Houston [1st Dist.] 2007, pet. denied); ***In re Mohawk Rubber Co.***, 982 S.W.2d 494, 498 (Tex. App.–Texarkana 1998, orig. proceeding). "A discovery period set by pretrial order should be adequate opportunity for discovery unless there is a showing to the contrary, and ordinarily a motion under paragraph (i) would be permitted after the period but not before." TEX. R. CIV. P. 166a(i) cmt.; ***McInnis v. Mallia***, 261 S.W.3d 197, 200 (Tex. App.–Houston [14th Dist.] 2008, no pet.).

A party contending that he has not had an adequate opportunity for discovery before a summary judgment hearing must file either an affidavit explaining his need for additional discovery or a verified motion for continuance. ***Tenneco Inc. v. Enterprise Prods. Co.***, 925 S.W.2d 640, 647 (Tex. 1998); *see* TEX. R. CIV. P. 166a(g), 251, 252. The affidavit (or verified motion for continuance) must describe the evidence sought, explain its materiality, and set forth facts showing the due diligence used to obtain the evidence prior to the hearing. ***Cooper v. Circle Ten Council Boy Scouts of Am.***, 254 S.W.3d 689, 696 (Tex. App.—Dallas 2008, no pet.).

When determining whether adequate time for discovery has elapsed, we consider (1) the nature of the cause of action; (2) the nature of the evidence necessary to controvert the no evidence

---

[8] Because we hold the trial court did not err in granting summary judgment on the tort claims based on judicial estoppel, we need not address the first, fifth, and sixth issues regarding the tort claims. *See* TEX. R. APP. P. 47.1.

motion; (3) the length of time the case has been active in the trial court; (4) the amount of time the no evidence motion has been on file; (5) whether the movant has requested stricter time deadlines for discovery; (6) the amount of discovery that has already taken place; and (7) whether the discovery deadlines that are in place are specific or vague. *Madison*, 241 S.W.3d at 155; *Fuqua*, 29 S.W.3d at 145 (citing *Dickson Constr., Inc. v. Fid. & Deposit Co.*, 5 S.W.3d 353, 356 (Tex. App.–Texarkana 1999, pet. denied)). When a party moves for no evidence summary judgment before the end of the specified discovery period, "our principal task is to determine if [the] record provides support for the trial court's consideration of a no evidence summary judgment motion" before the end of the designated discovery time frame. *McInnis*, 261 S.W.3d at 200. The "pertinent date for this inquiry is the final date on which the no evidence motion is presented to the trial court for ruling." *Id.* We review a trial court's determination that there has been an adequate time for discovery for an abuse of discretion. *Fuqua*, 29 S.W.3d at 145. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner "without reference to any guiding rules or principles." *Madison*, 241 S.W.3d at 155 (quoting *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999)).

**Analysis**

In their motion for continuance, the Lessees contended that "[i]n order to adequately and properly respond . . . [they] will need to conduct discovery . . . including requests for production, interrogatories, and depositions." However, they do not describe the evidence sought, explain its materiality, or set forth facts showing the due diligence used to obtain the evidence prior to the hearing. *See Cooper*, 254 S.W.3d at 696. Conclusory allegations are insufficient as they fail to give the trial court any basis upon which to weigh the materiality of the discovery sought or the length of continuance needed. *See Carter v. MacFayden*, 93 S.W.3d 307, 310 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

Moreover, we have determined that the contract between the Lessees and the City is unambiguous. That determination would not be altered by additional discovery. *URI, Inc.,* 543 S.W.3d at 757. Similarly, the Lessees being judicially estopped from pursuing tort claims would be unaffected by further discovery.

Finally, the City's motions for summary judgment had been on file for five months prior to the hearing. The Lessees do not explain why they did not serve discovery requests during that timeframe, other than a request for disclosure. The Lessees claim that the Texas Supreme Court's

emergency orders relating to the Covid-19 pandemic prevented discovery. However, those orders did not prevent the parties from serving written discovery requests, issuing subpoenas to third parties, or conducting depositions via video conference software such as Zoom. The Lessees essentially gave no explanation for the lack of discovery. Thus, the trial court did not abuse its discretion in denying the motion for continuance. The Lessees' eighth issue is overruled.

## SUMMARY JUDGMENT EVIDENCE

In their ninth issue, the Lessees urge the trial court erred in granting the City's objections to their summary judgment evidence. They urge that the evidence must have been considered by the trial court because the contract is ambiguous; therefore, they contend the evidence should not have been excluded under the parol evidence and four corners rules.

The parol evidence rule is a rule of substantive law. *S. Green Builders, LP v. Cleveland*, 558 S.W.3d 251, 258 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The rule applies "when parties have a valid, integrated written agreement, and precludes enforcement of prior or contemporaneous agreements." *Houston Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011); *see* *West v. Quintanilla*, 573 S.W.3d 237, 243 (Tex. 2019) ("When parties have entered into a valid, written, integrated contract, the parol evidence rule precludes enforcement of any prior or contemporaneous agreement that addresses the same subject matter and is inconsistent with the written contract."). "[A] written instrument presumes that all prior agreements relating to the transaction have been merged into it and will be enforced as written and cannot be added to, varied, or contradicted by parol testimony." *S. Green Builders*, 558 S.W.3d at 258. The rule does not, however, prohibit consideration of surrounding circumstances that "inform, rather than vary from or contradict, the contract text." *Houston Expl.*, 352 S.W.3d at 469; *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011) ("Extrinsic evidence cannot be used to show that the parties probably meant, or could have meant, something other than what their agreement stated.").

When a contract is unambiguous, courts "may still consider the surrounding 'facts and circumstances'" in which the agreement was made, "but 'simply [as] an aid in the construction of the contract's language.'" *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017). The parol evidence rule "does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text." *Id.* Courts may *not* use extrinsic evidence,

13

however, to show "that the parties probably meant, or could have meant, something other than what their agreement stated." *Id.* (emphasis added).

The Lessees attempted to defeat the no evidence motion for summary judgment by including evidence that the City violated certain practices when it granted the Chatelains' permit. The evidence included testimony from several witnesses that the City's common practice was to extend the lease boundaries straight into the water to determine whether a potential boathouse would intrude on another lease. They also included alleged conversations between Michael Terry and certain City employees about Terry's understanding of the contract and the City's practices. However, no evidence was offered as to whether these conversations took place at the time the contract was formed. The City objected to this evidence based on the parol evidence rule and the four corners rule. The City urged that because the lease terms are unambiguous and the evidence attempts to contradict those terms, it should be excluded. The trial court sustained the City's objections and excluded the evidence.

As explained above, the lease agreements are unambiguous. The lease does not prohibit the City from granting the Chatelains' boathouse permit because the boathouse is in the water and not on either of the Lessees' respective leased lots. As a result, any evidence attempting to contradict the leases' specified terms is inadmissible. *Id.* Because the trial court did not err in sustaining the objections and excluding such evidence, the Lessees' ninth issue is overruled.

## COSTS

In their tenth issue, the Lessees urge the trial court erred in awarding all costs to the City. They contend this judgment contradicts prior mandates from this Court and the Texas Supreme Court. The City agrees the judgment should be modified.

In its Final Judgment, the trial court ordered that "all costs of court are hereby taxed against Plaintiffs Carl Owens, Jr. and Connie Owens, and Intervenors Michael Terry and Sandi Terry, jointly and severally." However, the Texas Supreme Court previously ordered that "each party shall incur its own costs incurred in this Court." And with regard to the prior appeal to this Court, we ordered that "all costs of this appeal are hereby adjudged against the Appellant, the City of Tyler."

When an appellate court renders the judgment the trial court should have rendered, that judgment becomes the judgment of both courts. *See Cook v. Cameron*, 733 S.W.2d 137, 139 (Tex.

14

1987) (op. on reh'g); *Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 144 (Tex. App.–Dallas 2011, no pet.). Upon the trial court's receipt of an appellate court's mandate, the trial court has a mandatory, ministerial duty to enforce the appellate court's judgment. TEX. R. APP. P. 51.1(b); *Cook*, 733 S.W.2d at 139; *Cessna*, 345 S.W.3d at 144; *Harris Cty. Children's Protective Servs. v. Olvera*, 971 S.W.2d 172, 175 (Tex. App.–Houston [14th Dist.] 1998, pet. denied) (upon issuance of appellate mandate, trial court has duty to give effect to judgment by executing proper orders). The trial court has no jurisdiction to review or interpret an appellate court's mandate; it must merely observe the mandate and carry it out. *Cessna*, 345 S.W.3d at 144; *Oualline v. Burns*, 321 S.W.3d 719, 722 (Tex. App.–Eastland 2010, pet. denied).

We have the authority to modify the judgment to make the record speak the truth when we have the necessary data and information to do so. *See Shamoun v. Shough*, 377 S.W.3d 63, 78 (Tex, App.—Dallas 2012, pet. denied). Texas Rule of Appellate Procedure 43.2 expressly authorizes an appellate court to modify the trial court's judgment. TEX. R. APP. P. 43.2(b). Here, we have the necessary information to show that the Lessees should not be responsible for the entirety of the court costs throughout the pendency of the case. While the trial court could hold them responsible for the costs in its court, it cannot trump the mandates issued by this Court and the Texas Supreme Court. *See Cessna*, 345 S.W.3d at 144. As a result, we sustain the Lessees' tenth issue.

## DISPOSITION

Having overruled the Lessees' third, seventh, eighth and ninth issues, we *affirm* the trial court's orders granting summary judgment and excluding evidence. Having sustained the Lessees' tenth issue, we *modify* the trial court's judgment so that court costs from the prior appeals are not taxed against the Lessees. We *affirm* the judgment *as modified*.

BRIAN HOYLE
Justice

Opinion delivered October 6, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

15



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 6, 2021**

**NO. 12-21-00009-CV**

**CARL OWENS, JR., CONNIE OWENS, MICHAEL TERRY, AND SANDI TERRY,**
Appellants
V.
**THE CITY OF TYLER, TEXAS,**
Appellee

---

Appeal from the County Court at Law No. 3

of Smith County, Texas (Tr.Ct.No. 72337-B)

---

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that the judgment of the court below should be modified and as modified, affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be **modified** so that court costs from the prior appeals are not taxed against the Lessees/Appellants, **CARL OWENS, JR., CONNIE OWENS, MICHAEL TERRY, AND SANDI TERRY**; costs of this appeal are assessed against the Lessees/Appellants, **CARL OWENS, JR., CONNIE OWENS, MICHAEL TERRY, AND SANDI TERRY**; in all other respects the judgment of the trial court is **affirmed**; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

16